### State of Vermont v. Marshall Blaise, Jr.

[418 A.2d 27]

No. 355-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed June 3, 1980

*Mark J. Keller,* Chittenden County State's Attorney, Burlington, for Plaintiff.

*James L. Morse,* Defender General, *William A. Nelson,* Appellate Defender, and *Daniel Albert,* Law Clerk (On the Brief), Montpelier, for Defendant.

**Billings, J.** This is an appeal from the defendant's conviction by jury for breaking and entering in the nighttime in violation of 13 V.S.A. § 1201. The issues raised are whether the trial court erred in conducting portions of a suppression hearing in the presence of a testifying witness and whether the trial court erred in denying the defendant's motion for mistrial because certain information related to a suppressed out-of-court identification was elicited at trial. Underlying both issues presented is the admissibility and credibility of eyewitness identification of the defendant by a husband and wife who lived adjacent to the scene of the crime.

The record indicates that during the summer prior to the crime the husband and wife eyewitnesses had seen the defend-

ant loitering in the area of their residence with a group of young people. The wife was once told the defendant's name by a friend, but she was not sure at the time of the crime that she could accurately connnect the defendant with the name she had been told was his. The night of the crime the wife was awakened by the sound of breaking glass. She and her husband watched two individuals, one with red hair and a red bandana, the other with black hair, break into an adjacent store. After the husband called the police the two witnesses heard one of the two call the other "Mike" and warn of the approach of the police. They then saw the two run from the scene, the red-haired one passing through lighted areas which revealed his full face to the witnesses. The witnesses thereafter executed statements for the police describing the events that had occurred. According to the wife's testimony, the police, after obtaining these statements, produced a photograph of the defendant for identification. The wife noted certain inconsistencies between the photo and the person they had seen.

At the request of the defendant, a hearing was held to suppress an in-court identification of the defendant by the witness wife because the identification would be tainted by the police use of the photograph to obtain more positive witness identification shortly after the crime in violation of the due process requirements of the Fourth and Fourteenth amendments to the United States Constitution. The parties stipulated that the use of the photo was improper, and that the State would not use or refer to the photograph at trial.

During the course of the State's direct examination, the witness wife set out with considerable detail the activities she observed the night of the crime. At one point she stated:

> While he was running down the alley I had a chance to see him full face and from the lights and everything I made a positive identification of who it was.

When asked to point to the person she had observed and described, the witness identified the defendant. The defense, on cross-examination, elicited the answer that she had executed a statement to the police describing the defendant prior to being shown his picture, and that after she saw the photograph the police told her who it was.

After concluding cross-examination, the defendant sought to call another witness, apparently to impeach the witness wife. The court asked the defendant to which legal issue this witness' testimony would be relevant. The defendant reiterated the claim that the witness' proposed in-court identification would be tainted by the photographic identification and asked the court to conduct the discussion of the legal issue outside the hearing of the eyewitness. The discussion took place while the witness was sitting in the adjacent witness box. The court thereafter directed the parties to continue examining the eyewitness. The defendant objected to this procedure, but was overruled. At the close of this examination, the court made findings of fact based on all the evidence, to which the defendant made no objection. The court then made extensive conclusions on the impact of the situation and the photograph on the witness, her ability to have seen the defendant, and her testimonial demeanor, stating that the eyewitness' testimony "is uncontradicted and . . . it is credible, which is that her identification was based on what she saw in the alley on the night in question and not in the photograph."

It is within the discretion of the trial judge to conduct legal argument in the presence of a witness, especially where there has been no sequestration of witnesses. Indeed, this procedure differs in effect only slightly from the effect of a recess for attorney-witness consultation during examination, which is not impermissible unless prejudicial conduct is shown. *State v. Blakeney,* 137 Vt. 495, 507, 408 A.2d 636, 643 (1979). Here, however, the defendant spelled out his interpretation of the facts in the witness' presence, but the court's discretionary procedure will not be upset on review unless it amounts to an abuse of discretion.

Prejudice must appear from the findings, conclusions and the order below when reviewed in light of the evidence admitted prior to the contested bench conference measured against the appropriate legal standards. In the instant case, these standards find their most recent enunciation in *United States v. Crews,* 100 S. Ct. 1244, 1250–51 (1980). See also *State v. Kasper,* 137 Vt. 184, 404 A.2d 85 (1979).

There the Supreme Court upheld a trial court determination "that the witness' courtroom identification rested on an inde-

pendent recollection of her initial encounter with the [defendant] assailant, uninfluenced by the [excluded] pretrial identifications," after a review of the record. *United States* v. *Crews, supra,* 100 S. Ct. at 1251. From the Court's footnote 18 to this sentence, it is apparent that it relied upon the "enumerated several factors for consideration in applying the 'independent origins' test" of *United States* v. *Wade,* 388 U.S. 218, 241 (1967), and the more recent cases of *Manson* v. *Brathwaite,* 432 U.S. 98 (1977), and *Neil* v. *Biggers,* 409 U.S. 188 (1972). The *Wade* factors include the opportunity to observe the criminal act, any discrepancies between the untainted description and the defendant's actual description, any identification of another person, failure to identify the defendant on a prior occasion, and the lapse of time between the observation and identification. *Supra,* 388 at 241. See also *Neil* v. *Biggers, supra,* 409 U.S. at 199–200; *State* v. *Kasper, supra,* 137 Vt. at 192–93, 404 A.2d at 90 (quoting *Manson* v. *Brathwaite, supra,* 432 U.S. at 114).

Applying the *Wade* factors, the Supreme Court stated:

> We attach particular significance to the following circumstances which support the trial court's determination in this case: the victim viewed her assailant at close range for a period of 5–10 minutes under excellent lighting conditions and with no distractions, respondent closely matched the description given by the victim immediately after the robbery, the victim failed to identify anyone other than respondent, but twice selected respondent without hesitation in nonsuggestive pretrial identification procedures, and only a week had passed between the victim's initial observation of respondent and her first identification of him.

*United States* v. *Crews, supra,* 100 S. Ct. at 1251 n.18.

In the instant case the eyewitness apparently viewed the defendant for 5 to 10 minutes, during which time he was seen to pass through a well-lighted area in close vicinity to the eyewitness' point of vision. Most importantly, the eyewitness' description given immediately after her observations and before any suggestive photographic identification more closely corresponds to the actual appearance of the defendant than

the suggestive photograph of him, which the eyewitness distinguished from her mental impression when it was first shown to her. There was no showing that this description differed from that given at the hearing. The only factors which in any way tend to raise a question of the propriety of the eyewitness' in-court identifications are the fact that she supplied the defendant's name to her mental impressions only after her discussion with police and that she did so in spite of the fact she heard one of the two persons who broke into the store call the other "Mike." These facts are not fatal here, for the defense elicited from the eyewitness the statement that she believed the person whom she saw was the defendant, but was unsure that the person of the defendant, whom she clearly recalled from other experiences, had the defendant's name. Moreover, the eyewitness stated that she had told the police that she thought she knew who it was before the police suggested the name to her. The witness' own conclusion that she positively identified the defendant the night of the crime is borne out by the detail of her subsequent descriptions of him and the circumstances of her observations.

The court below did not err in concluding that the testimony of the eyewitness concerning the identification was uncontroverted and credible. "Based upon her observations at the time of the [crime, the eyewitness] constructed a mental image of [the perpetrator]. At [the hearing and] trial, she retrieved this mnemonic representation, compared it to the figure of the defendant, and positively identified him . . . ." *United States* v. *Crews, supra,* 100 S. Ct. at 1250. The in-court identification was not unreliable. *Manson* v. *Brathwaite, supra,* 432 U.S. at 114; *State* v. *Kasper, supra,* 137 Vt. at 192–93, 404 A.2d at 90. No prejudice has been shown in the failure of the court to exclude the eyewitness from hearing the discussion of counsel and the court.

The defendant's second claim of error arises from testimonial evidence adduced at trial from the eyewitness husband which related to the contents of the statement he executed for police shortly after the crime. The defendant's contention is that the State introduced the substance of the pretrial photographic identification suppressed by stipulation, and the court, therefore, erred in denying the defendant's motion for mistrial. As a result, the defendant maintains that he was preju-

diced in enjoyment of his constitutional rights as elaborated in *Gilbert* v. *California,* 388 U.S. 263 (1967).

A motion for mistrial is addressed to the trial court's discretion, and a denial of such a motion will not be reversed on appeal absent prejudicial error. *State* v. *Lawrence,* 137 Vt. 597, 601, 409 A.2d 997, 999 (1979); *State* v. *Berard,* 132 Vt. 138, 145, 315 A.2d 501, 506, *cert. denied,* 417 U.S. 950 (1974).

The information concerning the suppressed photograph did not appear during the State's direct examination of the witness husband, but as a result of certain questions asked by the State on redirect. On cross-examination by the defendant, the witness was asked if he knew and was familiar with the defendant's name prior to the crime, to which he replied that he knew the name only because he had once inquired about it but was not familiar with it. The defendant followed this answer by inquiring whether the next time the witness had heard the name was from the police after he had executed a statement containing his observations of the crime, including the fact that the red-haired person he saw had been called "Mike." The answer was affirmative. On redirect the State referred the witness to this statement and elicited from him the response that in the statement he had used the defendant's name.

The defense counsel then objected, contending that "[t]he use of the name Marshall Blais[e] in that written statement refers directly to the fact that it is the person that he saw in the picture and that is not coming into evidence in this case." Counsel proceeded in this vein to argue that she would have "no choice" but to draw the jury's attention to the suppressed photographic identification in order to show that the identification in the statement was tainted by the photographic identification. The facts elicited by the defendant's own examination belie this possibility, inasmuch as it is clear that the witness' statement had been made before, not after the witness saw the photograph.

Disregarding this inconsistency in the evidence, the defendant is barred from this claim by the fact shown by the record that his counsel raised the "very issue because on cross examination [she] referred to the statement, [and] asked if

the police officer furnished the name [which] name was furnished on the picture." A party who knew or should have known his questioning would elicit reference to excluded evidence cannot be heard to complain of the answer, cf. *Cone Realty Corp.* v. *Smith,* 137 Vt. 567, 568, 409 A.2d 567, 569 (1979) (civil action in which insurance was interjected), or of subsequent rehabilitative examination conducted with as much circumspection as is apparent here, cf. *Clemons* v. *United States,* 408 F.2d 1230, 1248 (D.C. Cir. 1968) (en banc), *cert. denied,* 394 U.S. 964 (1969) (The court implied that elicitation by the defense of information about an improper identification might open the issue for further inquiry, but stated that such elicitation would not open up the inquiry to other improper identifications).

*Affirmed.*