2013 VT 6

# Blanche S. Marsh Inter Vivos Trust, Blanche S. Marsh Trustee v. Burton and Margaret McGillvray, William and Lisa Pezzoni, Louis and Rosemarie Scibetta, Peter Steffens and Suzanne Kelliher

[67 A.3d 943]

No. 12-060

Present: Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.

Opinion Filed March 1, 2013

322

*Matthew T. Birmingham, III* of *Birmingham & Moore, P.C.,* Ludlow, for Plaintiff-Appellant.

*Thomas Hayes* and *Susan J. Manley* of *Hayes & Windish,* Woodstock, for Defendants-Appellees.

*Robert S. DiPalma* and *Kristina M. Roomet* of *Paul Frank + Collins P.C.,* Burlington, for Amicus Curiae Quechee Lakes Landowners' Association, Inc.

¶ 1. **Robinson, J.** This case involves the interplay between rulings and requirements relating to zoning in connection with a planned development and enforcement of restrictive covenants and deed restrictions applicable to property within the development. Plaintiff obtained municipal zoning approval to reconfigure the lot lines in her two-lot farmstead parcel within the Quechee Lakes subdivision, as well as to construct a dwelling on the second, yet-to-be-developed lot. The Environmental Division affirmed the zoning board's award of the latter permit. Notwithstanding this order, in a declaratory judgment action also initiated by plaintiff, the civil division concluded that plaintiff's proposed construction violated the applicable restrictive covenants and deed restrictions. On appeal, plaintiff argues that the Environmental Division's decision resolves the dispute, that the civil division improperly considered extrinsic evidence when the disputed deed restrictions were clear on their face, that defendants' challenge to plaintiff's right to build the proposed dwelling is time-barred, and that the character of the development has changed so much that the disputed deed restrictions are no longer valid. We affirm.

¶ 2. The Quechee Lakes subdivision includes up to 2500 residential units on approximately 6000 acres, together with specified commercial uses. In 1971, plaintiff[1] purchased a "farmstead" parcel, consisting of two contiguous building lots abutting Hillside Road at Quechee Lakes. The larger lot was about 5.73 acres, and the smaller lot, identified in the deed as the saleable lot, was one acre. The warranty deed conveying the property to plaintiff from the Quechee Lakes Corporation states that the property is subject to the Declaration of Covenants, Restrictions, Rights and Benefits ("Covenants") pertaining to the Quechee Lakes Subdivision. It also specifically provides that "the dwelling to be erected on this Farmstead shall be erected at the set back line of seventy (70) feet from Hillside Road and that the dwelling to be erected on the Salable Lot shall be erected at the set back line of 40 feet from Hillside Road."

---

[1] Some of the transactions described above in connection with the disputed property involved Blanche Marsh as an individual, Blanche Marsh and her late husband William Marsh, William Marsh individually, and Blanche Marsh as trustee of the Blanche Marsh trust. For convenience, we designate all of the above as "plaintiff" in our discussion.

¶ 3. The Covenants referenced in the deed contain the following pertinent provisions:

Section 1.01 *Definitions*.

. . . .

(e) "Farmstead" shall mean a single family parcel consisting of two Lots and containing not less than a total of four acres.

(f) "Lot" shall mean a portion of the Subdivision intended for separate ownership, including thereon a residence for use as permitted in this Amended and Restated Declaration.

. . . .

Section 5.01. *General Restrictions*.

(a) *Residential Use*. Each Lot . . . shall be used, improved and devoted exclusively to residential occupancy by a single family.

.  .  .  .

(iv) Other than Farmsteads, Woodsteads or Plantations which are provided with separate buildable parcels, Lots which contain 2 acres or more, may have a guest house. Farmsteads, Woodsteads and Plantations may have a barn.

.  .  .  .

(e) *Multiple Lots*. Two or more Lots may be used by an Owner for the erection and construction of a single family dwelling and incidental buildings permitted under this Amended and Restated Declaration, but the area consisting of such combined Lots shall not thereafter be subdivided unless the requirements of the Amended and Restated Declaration, as to area conveyed and location of buildings are complied with according to the original Lot boundaries . . . .

(f) *Setback. Side Yards.* No building or part thereof shall be erected, placed or permitted to remain on any Lot within forty (40) feet from any private or public way or greenbelt . . . without the consent of the Association.

¶ 4. In addition to the rights and restrictions arising from the deed and Covenants, plaintiff's property is subject to zoning restrictions under the Hartford Zoning Regulations. The Quechee Lakes Master Plan essentially functions as an "overlay" to the otherwise-applicable zoning regulations because approval of the Master Plan was part of the Town of Hartford Planning Commission's approval of the Quechee Lakes development. The Master Plan — essentially a zoning and permitting document — "is conceptual in nature," and "represents an overall guide to the development of a large area consisting of about one fifth of the land area of the Town of Hartford."

¶ 5. The Master Plan definition of "farmstead" is the same as the definition in the Covenants. In addition, the Master Plan defines some additional relevant terms not expressly defined in the Covenants:

3-3A *Single-family Dwellings* — A residential building designed for and occupied by one family only and detached from other such structures.

. . . .

3-3L *Guest House* — A non-rental accessory structure intended for occupancy by family and friends.

¶ 6. The Master Plan establishes the following relevant development standards:

4-2 *Single Family Dwellings on Individual Lots.* The following development standards shall apply to all single family homes built on subdivided lots within the Quechee Lake Corporation P.D.

4-2A No building or part thereof shall be erected, placed or permitted to remain on any single family lot within 40 feet from any public right of way . . . .

4-2B Single family lots shall be used only for single family residential purposes. A dwelling may have as accessory to it a garage of not more than three car capacity and other accessory structures which may include storage buildings, boat sheds, swimming pools, tennis courts, terraces, decks, porches, playhouses, and other customary accessory structures. Lots which contain two acres or more may have a guest house. Guest houses shall not exceed twenty (20) feet in height. Farmsteads and woodsteads may have a barn.

¶ 7. In 1973, plaintiff built a single-family dwelling within the area of the one-acre saleable lot. In 1984, the Hartford Planning Commission approved the resubdivision of plaintiff's two-lot parcel into two, equal-sized lots, each approximately 3.3 acres. Effective following the 1984 reconfiguration of the lot lines, Lot A of plaintiff's parcel abuts Hillside Road and contains the existing single-family dwelling. Lot B is undeveloped and begins about 280 feet from Hillside Road. Lot B has no road frontage, and accesses the road by a right-of-way over Lot A.

¶ 8. In 1985 and 1986, plaintiff received zoning permits to build a garage with guest quarters upstairs on Lot A and constructed the building. Lot B remained undeveloped.

¶ 9. In response to objections by some neighbors that construction of a dwelling on Lot B would violate a deed restriction, and in connection with her own efforts to sell Lot B, in 2007 plaintiff filed a declaratory judgment action against a group of neighbors (defendants) in the civil division to establish her right to build a single-family dwelling on Lot B more than 70 feet from Hillside Road.

¶ 10. In 2008, while the civil suit was pending, plaintiff applied to the Town of Hartford for a building permit to construct a single-family dwelling with attached garage and deck on Lot B. The Hartford Zoning Administrator issued a building permit, and a group of neighbors appealed that decision to the Hartford Zoning Board of Adjustment, which upheld the building permit.[2] The neighbors then appealed to the Environmental Division, arguing that because the Covenants did not authorize the construction of a "guest house" on Lot A, the dwelling unit constructed within the garage on Lot A in 1986 should be counted as

---

[2] Several but not all of the defendants in this quiet title action were among those appealing to the Hartford Zoning Board of Adjustment.

the second single-family dwelling allowed on plaintiff's two-lot farmstead parcel, and that, therefore, the single-family dwelling now proposed for Lot B should be counted as an impermissible third single-family dwelling on the overall farmstead parcel.

¶ 11. In 2009, the Environmental Division rejected this argument on the grounds that the Covenants were not incorporated into the Master Plan and therefore did not directly bear on the applicable zoning restrictions; if the accessory guest dwelling unit was noncompliant with the Master Plan, that nonconforming use would have no effect on whether the proposal to build a single-family dwelling on Lot B should be approved; and the proposed construction on Lot B did not run afoul of the Master Plan or applicable zoning regulations.

¶ 12. Meanwhile, the civil suit progressed to trial, concluding in 2011. Defendants argued that the deed requirement that dwellings on the two lots in the farmstead parcel be built "at" 70- and 40-foot setbacks, respectively, precluded the construction of a dwelling on Lot B, which began over 280 feet from the road. They also took the position that the Covenants prohibited guest houses on farmstead lots, that the guest quarters on Lot A were therefore not permissible as a "guest house," that the guest quarters should therefore be treated as a second dwelling, and that plaintiff was therefore precluded from building a third dwelling on Lot B. The trial testimony included a deposition of the subdivision's original developer who testified about, among other things, his vision for the development and the intent underlying various deed and Covenant provisions.

¶ 13. In 2012, the civil division entered a decision against plaintiff. The superior court credited the testimony of the subdivision's original developer in discerning the meaning of the Covenants and deed restrictions and held that the construction of a dwelling on Lot B represented an impermissible third dwelling on the farmstead property, barred by the applicable deed restrictions and Covenants. Plaintiff appeals.

I.

¶ 14. Plaintiff contends that defendants' challenges to plaintiff's proposed construction of a dwelling on Lot B are time-barred.[3] In

---

[3] Defendants contend that plaintiff "is precluded from raising the statute of limitations defense on appeal for the first time, where she did not raise it below,"

particular, plaintiff points to the eight-year statute of limitations for the enforcement of a restrictive covenant contained in a deed and argues that by 1987 the neighbors had notice of the reconfiguration of the lot lines, and thus the potential development of the back lot with a single-family dwelling that would be well more than 70 feet from Hillside Road; notice of the approval and construction of the guest quarters on Lot A of the farmstead parcel; and "inquiry notice" of a state subdivision permit for construction of another single-family dwelling on the back lot.

■ ¶ 15. The applicable statute provides: "An action founded on covenant, contained in a deed of lands . . . shall be brought within eight years after the cause of action accrues, and not after." 12 V.S.A. § 505. We have not had occasion to directly address when a "cause of action accrues" to begin the limitations period under § 505, but have held in the context of a breach of contract claim that "[t]he statute of limitations begins to run when a party can first sue on [the] cause of action." *White v. White*, 136 Vt. 271, 273, 388 A.2d 386, 388 (1978).

■ ¶ 16. We conclude that a cause of action for breach of a restrictive covenant accrues upon breach of the covenant. See *Girsh v. St. John*, 218 S.W.3d 921, 925 (Tex. App. 2007) ("An enforcement action accrues upon breach of the restrictive covenant."). Where the alleged covenant violations involve the construction of a noncomplying structure, the construction itself, and not merely preparatory steps that may be necessary predicates to the construction but do not themselves constitute or require the construction, starts the limitations period. See *Inv. Mgmt. Servs., Inc. v. Vill. of Folsom*, 808 So. 2d 597, 604 (La. Ct. App. 2001) (limitations period beginning upon "noticeable violation" not triggered by filing of invalid map in public records; statute required "a violation on [the lot] itself, such as clearing or staking out of land or the actual building of a house on the lot"); *Gerde v. Simonson Invs., Inc.*, 197 So. 2d 754, 759 (La. Ct. App. 1967) (limitations period regarding challenge to allegedly invalid amendment to covenants did not commence upon registration of amendment in land records but, rather, began when landowner began

---

and where it has been waived. V.R.C.P. 8(c); see also *Mann v. Levin*, 2004 VT 100, ¶ 26, 177 Vt. 261, 861 A.2d 1138. However, we consider the issue as plaintiff raised it in Plaintiff's Pre-Trial Memorandum, in argument to the court, and in Plaintiff's Request for Conclusions of Law.

using property for commercial purposes pursuant to allegedly invalid amendment); see also *Girsh*, 218 S.W.3d at 925, 929 (limitations period for violation of covenant against mobile homes began running with placement of mobile home on property).

■ ¶ 17. Plaintiff's reconfiguration of her lot lines and procurement of a revised subdivision permit from the State of Vermont in the 1980s, while necessary steps to building a dwelling on the reconfigured Lot B, were not sufficient to constitute the alleged violation of the Covenant provisions that defendant neighbors invoke in opposition to plaintiff's building plans in this case, and thus did not trigger the statute of limitations.[4]

## II.

¶ 18. Plaintiff argues that the civil division did not have jurisdiction over her declaratory judgment action in light of the Environmental Division's ruling that construction of a single-family dwelling on Lot B, 340 feet from Hillside Road was permitted by the Master Plan. Plaintiff's argument takes two forms. First, plaintiff argues, citing 24 V.S.A. § 4472, that the exclusive means for challenging an action pursuant to chapter 117 of Title 24 — in this case, presumably, the award of a building permit for a dwelling on Lot B — is through an appeal to the zoning board of adjustment or development review board, followed by an appeal to the Environmental Division. Citing a host of our prior decisions on the subject, plaintiff explains that § 4472 precludes collateral attacks on the validity of permits. The second iteration of plaintiff's argument is a more straightforward claim of res judicata or, at a minimum, collateral estoppel: Given that the Environmental Division ruled on "the propriety of constructing a single-family dwelling on Lot B," plaintiff argues, the civil division "should have refrained" from addressing the same question of "the propriety of constructing a single-family dwelling" on Lot B.

■ ■ ¶ 19. Both of these arguments rest on a misunderstanding of the difference between the issuance (or denial) of a zoning permit pursuant to applicable zoning regulations and enforcement

---

[4] Although we hold that defendants' claim that construction of a dwelling *on Lot B* violates the Covenants is not time-barred, defendants' effort to block construction of a dwelling on Lot B as a *remedy* for an alleged Covenant violation in connection with the construction of a guest house *on Lot A* is not timely. See *infra*, ¶¶ 36-37.

of private property rights embodied in deed restrictions and covenants. The two matters are distinct. The governing sources of law — Hartford's zoning regulations and the Master Plan upon which municipal approval of the development was predicated in the case of the zoning permit application, and the deed and Covenants in the case of the private property rights — are separate. Different courts have the authority to decide the respective questions. Compare *In re Woodstock Cmty. Trust & Hous. Vt. PRD*, 2012 VT 87, ¶ 40, 192 Vt. 474, 60 A.3d 686 ("[T]he Environmental Division does not have jurisdiction to determine private property rights." (citing *Nordlund v. Van Nostrand*, 2011 VT 79, ¶ 17, 190 Vt. 188, 27 A.3d 340)), with 24 V.S.A. § 4471 (municipal zoning decision appealable to Environmental Division).

¶ 20. If the question in this case were the validity of the municipal zoning permit issued to plaintiff to authorize construction of a single-family dwelling on Lot B, we might agree with plaintiff's arguments. But the question in this case is *not* the validity of the municipal zoning permit. The questions posed by plaintiff's quiet title action are whether the deed restrictions providing that the dwellings on the two farmstead parcel lots be erected "at the set back line" of 70 feet from Hillside Road and 40 feet from Hillside Road were effective; whether the restrictive covenant is a minimum setback restriction only, and not a maximum setback restriction; and whether, in light of applicable deed restrictions, plaintiff or a subsequent purchaser could build a single-family residence on Lot B.

¶ 21. The civil division clearly had authority to address these latter questions, and the Environmental Division did not. See 4 V.S.A. § 31; 12 V.S.A. § 402(a) ("Actions concerning real estate shall be brought in the unit in which the lands, or some part thereof, lie."). The cases cited by plaintiff, relating to the jurisdiction of the Environmental Division with respect to zoning appeals, have no bearing on the central issue in this case.

■ ¶ 22. Likewise, the res judicata effect of the Environmental Division's ruling on the zoning permit does not reach the distinct issue of whether plaintiff can build the proposed dwelling on Lot B in light of the Covenants and deed restrictions. See *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 20, 769 A.2d 668, 673 (2001) ("The doctrine of res judicata . . . bars the litigation of a claim or defense if there exists a final judgment in former litigation in

which the parties, subject matter and causes of action are *identical or substantially identical.*" (emphasis added) (quotation omitted)). The related doctrine of collateral estoppel "bars the relitigation of an issue, rather than a claim, that was actually litigated by the parties and decided in a prior case." *Id.* Plaintiff suggests that the "issue" decided by the Environmental Division was "the propriety of constructing a single-family dwelling" on Lot B, that the issue in this case is the propriety of the proposed construction, and that therefore, the Environmental Division has already decided the issue in this case. Plaintiff's characterization of the issues in the respective cases is overly broad; in neither case has a court been asked to rule globally on the "propriety" of the proposed construction. In the Environmental Division, the focus of the legal challenge was the permit; in the civil division, the question before the court involved the property rights of plaintiff and defendant neighbors.

¶ 23. Plaintiff suggests, though, that the Master Plan governs in the event of a conflict between the Master Plan and any other document; because the Environmental Division's decision rested on an interpretation of the Master Plan, the argument goes, the Environmental Division *did* decide the central issue in this case. Plaintiff's argument rests on the premise that, for the purposes of determining plaintiff's or defendants' property rights, the Master Plan trumps any provisions in the relevant deeds or Covenants that impose greater restrictions on plaintiff's use of the property than the Master Plan. Nothing in the Master Plan could or does purport to disrupt established private property rights or obligations, or to lessen plaintiff's obligations pursuant to her deed and Covenants, and the Environmental Division's recognition that the Master Plan is the conclusive authority in the event of a conflict with other documents relates specifically to the zoning context.[5] The Environmental Division recognized that it could consider provisions in deeds and private covenants, but only insofar as those issues relate to issues within its jurisdiction. Against this backdrop, that court specifically explained the scope and limitations of its authority to interpret the Master Plan:

---

[5] For example, the Environmental Division declined to consider the provision in the Covenants that farmstead lots were not allowed to have a guest house because that provision was never incorporated into the Master Plan and so the Master Plan "governs *with regard to the present zoning application* over any conflicting provision in the Declaration of Covenants."

[I]ssues of whether the proposal conflicts with certain deed restrictions or covenants does not relate to that jurisdiction, as those deed restrictions or covenants were not part of the municipal approval of the development, even if the development uses those covenants or deed restrictions internally to carry out the overall plan for the development. . . . All that can be before this Court in this case is whether the new house proposed for Lot B is allowed under the zoning ordinance and under any municipal approvals of the Quechee Lakes Planned Development. The municipal approval of the Quechee Lakes Planned Development requires the determination of whether the new house proposed for Lot B conforms with the Quechee Lakes Master Plan. On the other hand, *any question regarding whether the proposal conflicts with the Quechee Lakes Covenants or with individual deed restrictions is a matter for superior court.*

Collateral estoppel does not apply.[6]

### III.

¶ 24. The two deed restrictions and Covenants at issue in this case involve (1) the deed requirement that "the dwelling to be erected on this Farmstead shall be erected at the set back line of seventy (70) feet from Hillside Road and that the dwelling to be erected on the Salable Lot shall be erected at the set back line of 40 feet from Hillside Road" and (2) the Covenant prohibition of a guest house on a farmstead parcel coupled with the restriction against more than one dwelling per lot (or two per farmstead parcel). Plaintiff challenges the civil division's consideration of the original developer's intent in construing these restrictions in the absence of a finding of ambiguity. Moreover, plaintiff argues that the plain meaning of the unambiguous documents supports her position, and allows the proposed dwelling on Lot B.

### A.

■ ¶ 25. With respect to the first prong of her argument, plaintiff is correct that the trial court upended the ordinary

---

[6] Plaintiff seems to have conceded as much before the civil division at one point. Asked whether plaintiff contested that the issues involving interpretation of the Covenants are for the civil division and not the Environmental Division, plaintiff's counsel responded, "No. I do not."

principles of construction by writing, "[T]he court need not decide whether the deed's language is ambiguous because, even if it is, [the original developer]'s testimony shows a clear intent to limit development on plaintiff's property." When a deed restriction "is clear and unambiguous, 'there is no room for construction and the instrument must be given effect according to its terms.'" *Mann*, 2004 VT 100, ¶ 14 (quoting *Aiken v. Clark*, 117 Vt. 391, 393, 92 A.2d 620, 621 (1952)). Although a court's assessment of whether a document is ambiguous may itself require some consideration of extrinsic circumstances, the question of ambiguity generally comes first. *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988) (when assessing *whether* written instrument is ambiguous, court may consider circumstances surrounding making of· agreement). A court should generally decline to consider extrinsic evidence in interpreting the meaning of deed language when the language itself is unambiguous, but not the reverse; that is, a court should not generally decline to consider whether the meaning of deed language is clear when it concludes that the extrinsic evidence about the meaning is persuasive.

¶ 26. However, given the record, plaintiff is not in a position to challenge the trial court's consideration of extrinsic evidence in interpreting the deed and Covenant restrictions. At the trial below, *before* defendants took and sought to introduce the deposition testimony of the original developer, plaintiff called as a witness an attorney who had spent more than twenty years representing the developer at Quechee Lakes. Plaintiff called the lawyer to testify about "what happened, what people did, what Quechee Lakes Corporation did." Plaintiff explained that the testimony would "provide the context for interpreting the documents" before the court, and noted that "context frankly in this case is everything." Plaintiff specifically asked the witness whether the developer sometimes sought to specify where on a lot a house or barn could be built. In response to a question from the court about this line of inquiry, counsel stated,

> [L]et me be direct about what the point is. When Quechee Lakes Corporation wanted to specify where a particular house or a particular barn was going to be constructed it had a method and that method was it puts language in the Deed and it attaches a plot plan. That is the method Quechee Lakes Corporation used when it wanted to identify and specify a particular place for

construction. Not the ambiguous language that appears in this Deed.

¶ 27. When plaintiff specifically asked her own witness to explain the restriction in the deed requiring construction "at" the specified setbacks, the witness testified:

> I have no idea. It uses zoning language. It says it's a setback. A setback to me . . . creates a no development area between a road or a property line and . . . construction. I . . . don't understand the language in this context and . . . [have] tried to see if I could make some sense of this language and . . . I really can't.

Plaintiff went on to note the two competing interpretations of the language regarding the setback requirement — plaintiff's interpretation that the requirement simply established a minimum distance from the road, and defendants' interpretation that the term "at" meant that a dwelling had to be built exactly that distance from the road — no closer and no further. Plaintiff argued, "[H]ow the Corporation has acted in the past is illuminative on what is meant by this particular document." The trial court recognized that it could consider the extrinsic evidence only upon a finding that the deed language was ambiguous, and specifically asked for plaintiff's position on whether the deed was ambiguous or unambiguous. Plaintiff's counsel replied, "It's ambiguous."

■■ ¶ 28. In short, plaintiff's theory of the case below was that the deed language ·was ambiguous; plaintiff was instrumental in framing the trial court's task as one of construing ambiguous deed language; and plaintiff led the way in introducing extrinsic evidence in support of plaintiff's own interpretation. See *Mann*, 2004 VT 100, ¶ 14 ("An ambiguity exists when 'a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable.' " (quoting *Isbrandtsen v. N. Branch Corp.*, 150 Vt. at 579, 556 A.2d at 84).

¶ 29. Given this record, plaintiff cannot now challenge the trial court's consideration of extrinsic evidence to interpret the documents. See *State v. Hammond*, 2012 VT 48, ¶ 27, 192 Vt. 48, 54 A.3d 151 ("Defendant opened the door to this topic on cross-examination and cannot complain of prejudice resulting from his

own initiative."); *State v. Blaise*, 138 Vt. 430, 437, 418 A.2d 27, 31 (1980) ("A party who knew or should have known his questioning would elicit reference to excluded evidence cannot be heard to complain of the answer . . . ."); *Milne v. Capital City Gas Co.*, 129 Vt. 308, 309, 276 A.2d 632, 633 (1971) ("The plaintiff cannot now be heard to complain since the chancellor adopted the course of action requested, and agreed to, by the plaintiff.").

## B.

¶ 30. Plaintiff's strategy made sense. On the merits, plaintiff could not win on the setback issue on the basis of the deed language alone. *Either* the plain language required that the second dwelling be constructed "at" the designated line, *or* the language was, as conceded by the plaintiff, ambiguous.[7] Under no circumstances could we conclude, in the absence of extrinsic evidence or considerations apart from the deed language itself, that the plain meaning of the requirement that a dwelling "shall be erected at the set back line" is that the dwelling may be constructed anywhere behind the setback line. The term "at" cannot be said to unambiguously mean "at or beyond."[8] Accordingly, plaintiff suffered no prejudice from the trial court's decision to consider the testimony about the context surrounding the disputed deed language — both that offered by plaintiff and by defendants.

¶ 31. Assuming for the sake of argument that the language was ambiguous, the trial court's findings about the surrounding

---

[7] As suggested by the testimony of plaintiff's witness, the ambiguity could well arise from the coupling of the preposition "at," which is "used to indicate a point or place occupied in space . . . in, on, or near," Random House Unabridged Dictionary 129 (2d ed. 1993), with the term "setback," a term of art in the zoning context that typically connotes a minimum but not maximum distance from a boundary. See Black's Law Dictionary (9th ed. 2009) (defining setback as "minimum amount of space required between a lot line and a building line").

[8] In arguing that the setback provision in the deed unambiguously established a minimum but not a maximum setback, plaintiff relies on the Environmental Division's decision interpreting the Master Plan. As set forth above, the Master Plan is a zoning document, and is not a document within plaintiff's chain of title determining the scope of her property rights and restrictions, except to the extent that specific provisions of the Master Plan may be incorporated by reference into the Covenants. Plaintiff's invocation of the Master Plan accordingly takes us beyond the plain language of the deed and Covenants and into the very realm of extrinsic considerations that plaintiff argues should not be considered in construing the deed.

context were supported by the evidence. See *Beyel v. Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983) ("Findings of fact challenged on appeal are not to be set aside unless, taking the evidence in the light most favorable to the prevailing party and excluding the effects of modifying evidence, they are clearly erroneous."). The civil division found, among other things, that the development was originally designed to minimize intrusion on open spaces and views and to preserve undeveloped land to achieve the goal of maintaining a rural feel; the farmstead lots were intended to maintain the maximum amount of open space; the developer desired that the homes be built near the road and required open spaces to be maintained; each lot within the farmstead development was individualized; the developer did not want any homes constructed in the middle of the field; the developer did the best he could to avoid scattered development; the deed in question required that each dwelling was required to abut Hillside Road; and the deed was very specific as to where the homes needed to be distanced from the road.

¶ 32. Likewise, the civil division's critical conclusion on the "setback" issue was supported by the evidence and its findings: "To achieve his goal of maintaining open space, [the developer] directed that the homes be built near Hillside Road, specified in the deed the distance that each house was to lie from the road, and restricted development of each farmstead to include only a house, a barn, and a saleable lot." On the basis of these findings and conclusions, the trial court's implicit conclusion that the deed prohibited construction of the proposed dwelling, well beyond the "setback" line required by the deed, was well supported.

## C.

¶ 33. Because we affirm the civil division's denial of plaintiff's motion for declaratory judgment on the ground that plaintiff's proposed construction would violate the deed's requirement regarding the placement of a second dwelling relative to Hillside Road, we need not reach the question of whether, alternatively, the proposed construction would violate the deed and Covenant provisions limiting the number of dwellings on the farmstead parcel in light of plaintiff's construction of guest quarters over the garage on Lot A. Given the configuration of the lots reflected in the record before us, plaintiff could not possibly build a dwelling

on Lot B at a line 70 feet from Hillside Road because Lot B as a whole is removed from Hillside Road by approximately 280 feet.

¶ 34. However, we are mindful that during the pendency of this matter, plaintiff applied to resubdivide the lot lines again — this time to a configuration in which the border between Lots A and B runs perpendicular to, rather than parallel to, Hillside Road. If plaintiff succeeds in reconfiguring the lot lines, she will no longer face a geographic impediment to constructing a dwelling on Lot B at a line 70 feet from Hillside Road. Mindful that declaratory judgment actions are designed to clarify the legal relations of the parties and "terminate the uncertainty and insecurity of the controversy," we accordingly consider the trial court's ruling that plaintiff is precluded from building a dwelling on Lot B wholly apart from the "setback" issue. *Commercial Ins. Co. of N.J. v. Papandrea*, 121 Vt. 386, 392, 159 A.2d 333, 337 (1960).

¶ 35. The civil division's ruling flowed from its finding that a Covenant restriction limited construction on a farmstead lot to a house and a barn. The relevant section in the Covenants provides: "Other than Farmsteads, Woodsteads or Plantations which are provided with separate buildable parcels, Lots which contain 2 acres or more, may have a guest house. Farmsteads, Woodsteads and Plantations may have a barn." The court found that the second structure on Lot A was a "guest home"; however, because the Covenants did not allow the construction of a guest house on a farmstead lot, the civil division treated the guest quarters as a second dwelling on Lot A. The court then invoked equitable considerations to prohibit the construction of a "third dwelling" on Lot B of plaintiff's property — essentially as a remedy for plaintiff's violation of the applicable covenants with respect to Lot A.

¶ 36. We need not determine whether the trial court was correct in concluding that a guest house was not authorized on Lot A by virtue of the Covenants. To the extent neighbors seek to invoke an alleged longstanding Covenant violation *on Lot A* to enjoin construction of a new dwelling *on Lot B*, we conclude that the statute of limitations will bar their claims.

¶ 37. As noted above, the statute of limitations for enforcing a covenant in a deed is eight years. 12 V.S.A. § 505. The guest house was permitted in 1986 and apparently built around that time. The time for challenging an alleged Covenant violation with respect to

Lot A expired long ago — whether the second structure on Lot A is deemed an impermissible guest house or an impermissible second dwelling on a single lot.[9] To the extent that neighbors seek to enjoin otherwise-allowable construction on Lot B as a remedy for plaintiff's claimed violation of the applicable Covenants in connection with Lot A, absent additional considerations, their claim is time-barred. They cannot reprise a challenge to the guest house on Lot A under the .cloak of opposition to proposed and otherwise allowed construction on Lot B.

## IV.

¶ 38. Finally, plaintiff argues that the original developer, the Quechee Lakes Governing Association, and defendant neighbors themselves have undermined any purported scheme of development by reconfiguring internal lot lines, constructing dwellings away from the tree line, and failing to cluster buildings by the road. They note that plaintiff is the only one in the neighborhood required to cluster development near the front of her lot, and the Quechee Lakes Governing Association has approved development inconsistent with the alleged scheme relied upon by the civil division. Plaintiff argues that a court should not enforce a restrictive covenant "where a fundamental change has occurred in the intended character of the neighborhood that renders the benefits underlying imposition of the restrictions incapable of enjoyment." *El Di, Inc. v. Town of Bethany Beach*, 477 A.2d 1066, 1069 (Del. 1984).

¶ 39. We need not decide in this case whether and under what circumstances a restrictive covenant may become invalid by virtue of a change in the character of an area that renders the purposes of the restriction obsolete. The showing required to support such a conclusion would no doubt be substantial. See, e.g., *El Di*, 477 A.2d at 1069-71 (declining to enforce turn-of-the-last-century restrictive covenant prohibiting sale of alcoholic beverages where

---

[9] The record reflects that in 1986 the Quechee Lakes Architectural Review Board wrote plaintiff, expressed disappointment that plaintiff had not conveyed in advance an intent to build a barn/guest house, and cited the restrictions at issue in this case. Rather than taking action to enforce the Covenant, the Architectural Review Board expressly asserted that the "barn/guest house cannot be used as a second full-time-single-family residence." In the face of this history, the argument that the guest house should now be recharacterized as a single-family dwelling is particularly incongruous.

area surrounding property had evolved from quiet, residential to overwhelmingly commercial, area had transformed from church-affiliated residential community to summer resort visited annually by thousands of tourists, and practice of "brown-bagging," whereby restaurant patrons brought their own alcoholic beverages, had continued unchallenged for at least twenty years at commercial establishments in restricted area); see also *Duffy v. Mollo*, 400 A.2d 263, 266 (R.I. 1979) (holding deed restriction limiting property to residential use invalid where character of surrounding land had radically changed to commercial use since time of restrictions, and lot was virtually useless and valueless for residential purposes).

¶ 40. In this case, the civil division made no findings to support plaintiff's argument that her property alone was subject to restrictions that sought to promote development goals that no longer make sense in light of subsequent surrounding development. Nor would plaintiff's evidence in this case support such a conclusion. Evidence that the plaintiff's deed is the only one in the neighborhood, of which plaintiff's attorney-witness is aware, that has the restrictive setback language does not establish the invalidity of that language — especially where the trial court specifically found, on the basis of competent evidence, that each lot within the farmstead development was "individualized." As this Court has explained, "[B]y virtue of [the restriction's] appearing in the deed the [deed holder] knew or should have known of the restrictive covenant . . . . Moreover, [one] who takes land with notice of such a restriction will not in equity and good conscience be permitted to act in violation of the restriction." *McDonough v. W.W. Snow Constr. Co.*, 131 Vt. 436, 441, 306 A.2d 119, 122 (1973) (citations omitted); see also *id.* at 442, 306 A.2d at 123 (noting that deed restriction "limit[ing] construction on the lot to a dwelling house and outbuildings" is "enforceable for the purpose of protecting a view" (citing *Fuller v. Arms*, 45 Vt. 400 (1873))).

¶ 41. Moreover, plaintiff's anecdotal evidence regarding instances of nearby development that is comparable to plaintiff's own plans, and general assertions (some without citation to any evidence in the record) that by virtue of various exceptions and changes over time the development in the neighborhood of plaintiff's parcel no longer conforms to the original plan, are insuffi-

cient to invalidate the deed restrictions and Covenants that block plaintiff's proposed construction of a dwelling on Lot B.

*Affirmed.*