## STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| --- | --- |
| | Docket No. 18-2-18 Vtec |

| | |
| --- | --- |
| 777 Hallock Road | DECISION ON THE MERITS |

Douglas Tolles and Geralyn McBride seek approval to add over 50 cubic yards of crushed stone to their property, located at 777 Hallock Road in New Haven, Vermont. They plan to use the stone to improve and extend a pre-existing accessway used to reach the interior of their property. When the Administrative Officer of the Town of New Haven (Town) approved their application for crushed stone fill, their neighbors at 849 Hallock Road, Nicholas Tonzola and June Moncrief, appealed the decision to the Town's Development Review Board (DRB). The DRB affirmed the Administrative Officer's approval on January 16, 2018, and then the Tonzola-Moncriefs timely appealed to this Court.

This Court presided over a two-day merits hearing on October 17 and 18, 2018, in the Costello Courthouse in Burlington, Vermont.[1] A site visit occurred on the morning of the first day of trial. After trial, the Court allowed the parties to submit proposed findings of fact and conclusions of law.

The Tonzola-Moncriefs are represented by Attorney Michael Russell, Esq. The Tolles-McBrides are represented by Attorney Christopher Roy, Esq. The Town is represented by Attorney Cindy Hill, Esq.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

---

[1] Pre-trial, the parties filed motions in limine on the admissibility of evidence of a Tonzola-Moncrief septic easement that burdens the Tolles-McBride property in the area of the accessway. The easement is at issue in a separate case before the Addison Civil Division, entitled June Moncrief, et al. v. Geralyn McBride, et al., No. 167-10-17 Ancv. Acknowledging our limited jurisdiction, we decided to admit evidence of the easement for the limited purpose of providing context. Our decision does not address the validity or scope of the easement. At the beginning of trial, the parties stipulated to the existence of a septic easement of undefined scope in the area of the accessway.

**Findings of Fact**

1.      The Tolles-McBrides own the property at 777 Hallock Road in New Haven, Vermont.

2.      The Tonzola-Moncriefs own the property at 849 Hallock Road in New Haven, Vermont.

3.      777 and 849 Hallock Road are abutting properties.  777 Hallock Road lies to the southeast and downgradient of 849 Hallock Road.

4.      The Tolles-McBrides have historically used a strip of their land about 25 feet from the boundary with 849 Hallock Road to access the interior of their property.

5.      Vehicles, including a water tank truck, previously got stuck in the accessway due to soft, moist soils.

6.      The area where the accessway is located is relatively flat, but the area generally slopes from a higher elevation at 849 Hallock Road downward toward 777 Hallock Road.  The Tolles-McBrides selected this location for the accessway in part because of the relatively flat grade.

7.      The Tolles-McBrides previously applied for and received a road access permit for the point where the accessway meets Hallock Road.

8.      In spring 2017, the Tolles-McBrides added crushed stone and soil fill to the accessway under a 2016 permit from the Town to facilitate vehicle access.

9.      The Tolles-McBrides now seek Town approval to add more than 50 cubic yards of additional crushed stone to the accessway.  The desired crushed stone is sized three-quarters of an inch, without fine sediments.

10.     The crushed stone will be used to supplement the existing stone of the accessway and to extend the accessway.  It is intended to alleviate the issue of vehicles getting stuck in the moist soils.

11.     The accessway passes through the area of a septic easement which burdens 777 Hallock Road and benefits 849 Hallock Road.  The validity and scope of the easement are the subjects of litigation before the Civil Division in Addison County.

12.     The septic system for 849 Hallock Road is presently not failing and has not failed.

13.     With the crushed stone in place, it is not clear whether it will be possible for the Tonzola-Moncriefs to construct a replacement septic system at 849 Hallock Road should they be required to do so at some future time.

14.     The future system will cost an estimated $35,000 to $40,000. The Court did not receive evidence on how the accessway or crushed stone could or will affect that cost.

15.     In the area of the accessway and septic easement there is an outflow for a curtain drain from the perimeter of 849 Hallock Road.

16.     In the area of the accessway and septic easement there was a subsurface perforated drain pipe which extended from 849 Hallock Road approximately 160 feet into 777 Hallock Road. This pipe was two to three feet below the surface.

17.     The perforated pipe was installed with large-size crushed stone underneath and clay fill on top.

18.     The water within the perforated pipe comes from 849 Hallock Road. The nature of the water within the perforated pipe is uncertain. It could be subsurface water, septic effluent, or both.

19.     The Tonzola-Moncriefs have taken no steps to review or alter the discharge of fluids from the perforated pipe or the curtain drain, which are both under their control, from 849 Hallock Road onto 777 Hallock Road.

20.     Mr. Tolles excavated and removed the perforated pipe up to the common boundary in August 2017. Like the curtain drain, fluid continues to exit this pipe at the common boundary in the area of the accessway.

21.     The removal of the perforated pipe altered drainage in the area of the accessway. Drainage that was formerly dispersed by the pipe below the surface of the 777 Hallock Road property is now concentrated surface drainage at the boundary between 777 and 849 Hallock Road in the area of the accessway.

22.     Because the area of the accessway had moist soils that he believes are septic, Mr. Tolles excavated approximately 45 cubic yards of soil and replaced approximately 43 cubic yards of soil in the spring of 2017.

23.     In the late-spring of 2018, Mr. Tolles partially restored the area around the accessway by raising the grade of the slight depression that had resulted from the construction of the accessway, excavation of the perforated pipe, and replacement of the soils. Vegetation has regrown partially. He has plans for further restoration.

24. Water has not collected on 777 Hallock Road since Mr. Tolles began restoring the area.

25. Surface water in the area has historically flowed to the south or southeast. Water collects at a point of low elevation to the south and flows through a culvert under the Tolles-McBrides' paved driveway (not the accessway). This flow continues today. While the accessway may, at most, cause a small meander in flow on 777 Hallock Road and slow the flow slightly, the overall flow direction has not changed.

26. The crushed stone of the accessway will not result in any significant changes to surface water drainage on 849 Hallock Road. There have been no drainage changes at 849 Hallock Road to date. Water will not impound behind the accessway and back up onto 849 Hallock Road.

27. There was no soil erosion in the area prior to the accessway or the first load of crushed stone added by Mr. Tolles. New crushed stone will not cause soil erosion.

28. The Town's Administrative Officer approved the Tolles-McBrides' request to add over 50 cubic yards of crushed stone to their property as fill. The Town's DRB affirmed the approval on January 16, 2018.

29. Dr. Miles Waite testified as an expert on behalf of the Tolles-McBrides. He was originally hired by the Tolles-McBrides to study the outflow from the perforated pipe and the moist soils in the area of the accessway in September 2017. He is the owner and senior hydrologist at Waite-Heindel Environmental Management.

30. Stephen Revell testified as an expert on behalf of the Tonzola-Moncriefs. The Tonzola-Moncriefs hired him to analyze drainage on their property in August 2017. He is a geologist with a specialty in hydrogeology, certified nationally and licensed in New Hampshire.

**Conclusions of Law**

Under § 525 of the Town's Zoning Regulations (Regulations), the Town's Administrative Officer can approve an application for over 50 cubic yards of fill if the applicants can show that "the activity will not significantly alter existing drainage patterns, cause soil erosion, or result in any hazard or expense to the community." While the Tonzola-Moncriefs did not argue that soil erosion will result, they did assert that the crushed stone has implications for the other factors of § 525.

4

**I.      Whether the Tonzola-Moncriefs have standing**

Before considering § 525 of the Regulations, we must evaluate the Tonzola-Moncriefs'

standing, which the parties debated for the first time in their post-trial briefs.

This Court only has subject matter jurisdiction over actual cases or controversies involving

litigants with standing.  Brod v. Agency of Nat. Res., 2007 VT 87, ¶ 8, 182 Vt. 234.  Because

standing is an essential part of the Court's subject matter jurisdiction, it cannot be waived, and

its absence can be raised at any time.  Town of Charlotte v. Richmond, 158 Vt. 354, 357-58 (1992).

To have standing to appeal to the Environmental Division, an individual must: (1) own or

occupy property in "the immediate neighborhood" of the subject property; (2) "demonstrate a

physical or environmental impact on [his or her] interest"; and (3) allege that, "if confirmed," the

DRB's decision "will not be in accord with the policies, purposes, or terms of the plan or bylaw of

that municipality."  24 V.S.A. § 4465(b)(3).  The individual must also participate in the relevant

municipal proceeding below.  24 V.S.A. § 4471(a); see also 10 V.S.A. § 8504(b)(1) (requiring a

party to satisfy both 24 V.S.A. §§ 4465 and 4471(a) to have appellant standing).

The Tonzola-Moncriefs are abutting property owners within the immediate neighborhood

who participated in the DRB proceeding.  While we reach the overall result of upholding the

appealed permit at issue, the evidence before the Court shows that the Tonzola-Moncriefs have

offered a physical or environmental impact to their property interest.  See In re JLD Props. of St.

Albans, LLC, Nos. 129-5-06 Vtec, et al., slip op. at 27-31 (Vt. Envtl. Ct. Jan. 20, 2010) (Durkin, J.)

(upholding party standing post-trial where party alleged adverse impacts even though party did

not succeed at trial); see also In re Mahar Conditional Use Permit, 2018 VT 20, ¶¶ 27-28

(describing physical or environmental impact requirement).

Further, the Tonzola-Moncriefs hold a septic easement in the area of the accessway.  We

cannot adjudicate real property disputes, but we have the authority to recognize property

interests for jurisdictional purposes.  See Blanche S. Marsh Inter Vivos Tr. v. McGillvray, 2013 VT

6, ¶ 23, 193 Vt. 320; In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶ 40, 192 Vt. 474

(recognizing this Court's authority to take notice of easement when imposing permit conditions);

In re Town of Charlotte Recreational Trail, Nos. 98-5-08 Vtec, 58-4-10 Vtec, slip op. at 13-14 (Vt.

Super. Ct. Envtl. Div. Feb. 14, 2011) (Durkin, J.) (noting limited authority of this Court to consider

real property as part of a "jurisdictional inquiry").  Thus, we conclude that the Tonzola-Moncriefs maintain their standing to appeal the Town's approval of the crushed stone.[2]

**II.      Whether the crushed stone significantly alters existing drainage patterns**

Under § 525 of the Regulations, the Tolles-McBrides' proposed activity cannot significantly alter the existing drainage patterns of the area.  The Tonzola-Moncriefs argue that the existing accessway already affects drainage significantly, so more crushed stone will only exacerbate its impact.

Most of the evidence on this point relates to the period from the spring of 2017 to the spring of 2018 (disturbed period) when Mr. Tolles excavated the perforated pipe, removed 45 cubic yards of soil and replaced it with 43 cubic yards of soil in the area of the accessway, and first laid crushed stone and fill on the accessway.  Less evidence was provided to show the settled drainage pattern before and after the disturbed period.

Before the disturbed period, the soils of the accessway were soft and moist.  Vehicles, including a water tank truck, occasionally got stuck, which prompted Mr. Tolles to begin laying crushed stone in the spring of 2017.  The parties testified that there was never standing water in the area before the disturbed period.

Over the course of the disturbed period, puddles of standing water began to appear around the area of the accessway and septic easement.  In part, this was caused by the excavation of the perforated pipe, which now discharges into the area along with the Tonzola-Moncrief's curtain drain.  The puddling occurred on the Tolles-McBride property, north of the accessway. The Tonzola-Moncriefs testified that water has not puddled on their land at any time, including during the disturbed period.

After the disturbed period, in the late-spring of 2018, Mr. Tolles partially restored the area around the accessway by raising the grade of the slight depression that had resulted from the construction of the accessway, the excavation of the perforated pipe, and the replacement of the soils.  Mr. Tolles has further plans to replace the soils in the area and restore the grade

---

[2] We acknowledge that any downgradient drainage effects of the accessway could not impact the uphill Tonzola-Moncrief property.  They retain standing to argue that drainage will change because they alleged that the accessway will cause water to back up, affecting the subsurface water on their property.  The arguments related to drainage are interrelated, and in showing how water might impound behind the accessway, the Tonzola-Moncriefs were entitled to discuss the accessway's hydrological impacts on the whole.

fully, but he is waiting for the removal of the perforated pipe from the Tonzola-Moncrief property, alleging that the discharge from the perforated pipe continues to contaminate the soils.

The parties both acknowledged that there has not been puddling since the end of the disturbed period or since the area was restored.

The only evidence from after the disturbed period are two photos, admitted at trial as Exhibit Q. Mr. Tolles took these photos on the morning of the second day of trial, October 18, 2018. The photos show the partially restored area north of the accessway, which is no longer depressed and has partial grass-coverage. No standing water is apparent in these photos.

The experts contradicted each other as to whether the accessway and crushed stone have or might cause a significant alteration of existing drainage. Dr. Waite, expert for the Tolles-McBrides, testified based on studies on the hydraulic conductivity of crushed stone and his experience that the stone of the accessway would have a negligible effect on drainage. Compaction from vehicle traffic did not affect his opinion. Mr. Revell, expert for the Tonzola-Moncriefs, testified contrary to Dr. Waite's testimony by pointing out that the high hydraulic conductivity of crushed stone was theoretical. Mr. Revell did not offer an alternative means of assessing the effect of the crushed stone on water flow.

Dr. Waite stated that the overall topography of the land has and will not change in any meaningful way, so water drainage will remain the same. Mr. Revell opined that the accessway prevents water flowing from the Tonzola-Moncrief property from fanning out radially across the slope of the Tolles-McBride property. He also stated that water could impound behind the accessway and slow drainage to the point that water backed up to affect the Tonzola-Moncrief property. Mr. Revell offered that the puddling around the accessway during the disturbed period was proof that it altered the drainage patterns. Mr. Revell did not, however, conclude that the water ultimately ends up draining to a different area or along a significantly different course.

Mr. Revell and Mr. Tonzola speculated that extending the accessway farther west with more crushed stone could reroute drainage patterns. They offer that drainage might be rerouted to flow across the Tolles-McBride property to the southwest instead of the southeast, because there is a point on the Tolles-McBride property where the slope diverges in the two different

directions. Because their testimony only contained vague, speculative descriptions of these remote effects, we accord it minimal weight.

We conclude that the addition of more crushed stone to the accessway will not significantly alter existing drainage patterns. The parties observed some puddling of water during the disturbed period, when the land was below-grade and after the excavation of a drainage pipe. At most, the surface water will be slightly diverted westerly along the northern edge of the accessway, where it will flow around or through the accessway, and then flow in a southerly or southeasterly direction as it did prior to the installation of the accessway. While the water may be slightly slowed, the evidence does not show a significant change in drainage. Nor does the evidence show that the water will impound behind the accessway.

### III. Whether the crushed stone causes soil erosion

Based on the evidence offered by the parties, the placement of crushed stone on the Tolles-McBride property will not cause soil erosion. Dr. Waite provided his opinion that the placement of stone generally acts to reduce soil erosion. This is especially true given the use of motor vehicles over the accessway, which formerly disturbed the soft, moist soils in the area. Also, soil erosion is not a serious concern given the mild grade at this location. Neither the Tonzola-Moncriefs nor Mr. Revell offered testimony refuting these points. We conclude that the crushed stone will not cause soil erosion.

### IV. Whether the crushed stone causes any hazard

The parties next provided evidence on whether the crushed stone will result in an "expense or hazard to the community." Regulations § 525. The Tonzola-Moncriefs offer that water flowing from the perforated pipe pools around the accessway and that standing natural water creates a hazard. They did not specify how or why shallow pools of standing water are hazardous.

We find this offer unpersuasive. While standing water alone does not rise to the level of a hazard, the evidence also shows that after the disturbed period there is little if any standing water in the area.[3]

---

[3] We also note that the discharges from the perforated pipe and curtain drain into the area are attributable to and entirely within the control of the Tonzola-Moncriefs, so that any potential standing water hazard is largely under their control.

If the water is septic effluent, as Mr. Tolles alleged in the separate context of drainage, Dr. Waite testified that the crushed stone will reduce pooling of the effluent, mitigating its harm, by reducing the amount of rutting from vehicle tires. Fewer ruts means fewer depressions where water can pool. Mr. Revell confirmed this effect of crushed stone. Dr. Waite added that less rutting also means fewer tripping hazards.

Lastly, the Tonzola-Moncriefs argue that the accessway compromises the ability of the natural soils to diffuse septic waste. They assert that this will result in a future hazard if they eventually install a replacement septic system in the easement area.

While we recognize the Tonzola-Moncriefs' concern about their septic system, they did not provide evidence showing that the accessway could impair a leach field. Further, Mr. Revell testified that the Tonzola-Moncriefs' system has not and is not failing. The Tonzola-Moncriefs speculate about a vague future risk, which the Court cannot use as a basis for decision. See Skaskiw v. Vt. Agency of Agric., 2014 VT 133, ¶ 31, 198 Vt. 187 (describing how courts "should not render decisions on claims that are purely speculative . . . involving events that are contingent upon circumstances that may or may not occur in the future.") (quotation omitted).

Further, their future choice to construct an inappropriate replacement septic system would be the cause of the hazard in the situation they describe, not the construction of the accessway now. We conclude that the crushed stone will not cause a hazard to the community.

## V. Whether the crushed stone causes any expense

The Tonzola-Moncriefs offer that more crushed stone will impair their septic easement by compromising the ability of the easement area to act as a replacement leach field. They allege that this will cause them greater expense if they need to replace their current leach field at an unidentified future time.

First, this argument suffers from the same speculation as the above claim of a future hazard from a dysfunctional septic system.

Second, the Tonzola-Moncriefs stated that a new system will cost between $35,000 and $40,000 but did not produce any evidence showing how the accessway will alter or increase this cost. In fact, Mr. Revell testified that an in-ground leach field like that of the Tonzola-Moncriefs requires relocation to new soils whenever it is replaced, and that only mound systems can be

9

replaced in the same location with a substitution of fresh soil. Therefore, irrespective of the Tolles-McBrides' application, the Tonzola-Moncriefs would need to identify new boundaries for their replacement field, with the associated costs. Further, they did not produce evidence demonstrating that a replacement field is only possible in the easement area.

Lastly, we reiterate that our jurisdiction does not allow us to consider the extent of their rights or any value lost with regards to the septic easement. See Blanche S. Marsh, 2013 VT 6, ¶¶ 18-23 (citing Woodstock Cmty. Tr., 2012 VT 87, ¶ 40) (discussing the Environmental Division's limited jurisdiction over private property rights). We conclude that the crushed stone will not result in an expense to the community.[4]

## Conclusion

For the foregoing reasons, we **UPHOLD** the Administrative Officer's approval of the Tolles-McBrides' application. We conclude that the drainage patterns before and after the placement of crushed stone will not change significantly. The stone will not cause soil erosion or a hazard or expense to the community.

A Judgement Order accompanies this Decision. This completes the current proceedings before this Court.

Electronically signed on December 21, 2018 at 11:27 AM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

---

[4] In addition, we note that § 525 requires that any hazard or expense be "to the community." The Tonzola-Moncriefs assert that as members of the community, any hazard or expense to them qualifies. Their use of the term community appears inapposite to the Regulations' use of the word in other contexts as well as the general definition of community. However, having reached the above conclusions, we do not reach this question.