STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| | Docket No. 80-7-19 Vtec |

| | |
|---|---|
| Missbrenner & Legge SD Approval | DECISION ON MOTIONS |

This appeal concerns a 2-lot subdivision and related improvements (the Project) proposed by Lisa Missbrenner and Cynthia Legge (Applicants) for their property located on Sawmill Road in Pownal, Vermont. James Cottrell and Jeannie Cottrell (Neighbors) challenge the Project's compliance with the Town of Pownal Zoning Bylaws. Based on representations from both parties, the Town of Pownal Development Review Board (DRB) failed to issue a decision regarding Applicants' proposal within the 45-day period required by 24 V.S.A. § 4464(b)(1). As such, the proposal may be deemed approved. Because Appellants did not raise the issue of deemed approval in their Statement of Questions, and the parties did not present arguments on the subject, we do not opine as to the status of the Town's review. See Statement of Questions, filed. Our review in this proceeding is limited to the 13 questions Appellants raise in their Statement of Questions. Presently before the Court are the parties' motions for summary judgment.

Neighbors are represented by Lon T. McCLintock, Esq. Applicants are represented by Rachel B. Strecker, Esq.

**Legal Standard**

We will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable through V.R.E.C.P. 5(a)(2). We accept as true all of the nonmovant's allegations of fact, as long as they are supported by affidavits or other evidence. White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). In considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

1

**Factual Background**

We recite the following facts, which we understand to be undisputed unless otherwise noted, based on the record now before us and for the sole purpose of deciding the pending motions. The following are not specific factual findings with relevance outside of this summary judgment decision. *See* Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)).

1. Applicants own a parcel (Tax Map No. 03-03-121.1) on Sawmill Road in the Town of Pownal, Vermont (the Property).

2. Applicants propose to subdivide the Property into two lots, and to build a residence, wastewater system, and well, on the smaller of the two lots (the Project).

3. The Project must comply with the applicable provisions of the Town of Pownal Zoning Bylaws, adopted in 2008 and amended November 10, 2011.

4. The Project is located in the Town's Rural Residential 2 Zoning District (RR2 District).

5. Applicants received the Property by deed of Clyde E. Lanfair, dated October 18, 2001. See Applicants' Motion for Summary Judgment (Applicants' Motion), Exhibit B, filed Mar. 26, 2020.

6. Neighbors own land across Sawmill Road to the west of the Property; Sawmill Road runs between Neighbors' land and that of Applicants.[1]

7. In 2019, Applicants had the Property surveyed for subdivision (2019 Survey). See Applicants' Motion, Exhibit D. Applicants submitted the 2019 Survey to the DRB and this Court on appeal. See id.

8. The 2019 Survey was prepared by John S. Wright, a Vermont licensed surveyor. See id.; Applicants' Reply to Neighbors' Opposition to Summary Judgment (Applicants' Reply), Exhibit J, filed June 15, 2020.

9. The 2019 Survey depicts the boundaries of the Property, the lot to be created by subdivision, the location of Sawmill Road, the location of the Sawmill Road right-of-way, and the location of proposed improvements among other things. See Applicants' Motion, Exhibit D.

---

[1] This description is intended only to provide context regarding the area and Neighbors' relationship to the Project. It is not intended to describe the precise boundaries of the properties, the exact location of Sawmill Road, or the location of the Sawmill Road right-of-way.

Neighbors dispute survey's accuracy as to boundary lines, particularly the location of the Property's westerly boundary line, and the location of the Sawmill Road right-of-way.

10.     According to the 2019 Survey, the lot to be created by subdivision will be 2.42± acres, of which .33± acres are within the Sawmill Road right-of-way. See id. Neighbors contend that the underlying information about property boundaries is incorrect, therefore all measurements on the survey are based on a faulty premise. They do not challenge the accuracy of the measurements themselves.

11.     After Applicants filed their motion for summary judgment in this case, and after Neighbors filed their response, additional information was discovered regarding the location of the Sawmill Road right-of-way. Public records show that the Town Select Board laid out Sawmill Road in 1892, following certain widths, courses, and distances. See Neighbors' Motion for Summary Judgment or Remand (Neighbors' Motion), Exhibit 24, filed July 13, 2020.

12.     The parties agree that the 2019 Survey, completed before the discovery of new information, did not accurately depict the location of the Sawmill Road right-of-way.

13.     Following the discovery of new information, Applicants' surveyor Mr. Wright amended the 2019 Survey (Amended Survey). See Applicants' Reply, Exhibit H. Mr. Wright attests that he did so "to reflect newly found information confirming the location of the Town of Pownal's right-of-way [for] Saw Mill Road." See id., Exhibit J. Neighbors dispute that Mr. Wright correctly depicted the location of the right-of-way on the Amended Survey.

14.     The Amended Survey depicts the boundaries of the Property, the lot to be created by subdivision, the location of Sawmill Road, the location of the Sawmill Road right-of-way, and the location of proposed improvements among other things. See id., Exhibit H. Neighbors dispute the accuracy of boundary lines depicted on the Amended Survey, particularly the location of the Property's westerly boundary line, and the location of the Sawmill Road right-of-way.

15.     According to the Amended Survey, the lot to be created by subdivision will be 2.42± acres, of which 0.27± acres are within the Sawmill Road right-of-way. See id. The Amended Survey also depicts the following building setback measurements: 40 feet from the property line for the rear yard, 30 feet from property lines for the side yards, and 25 feet from the edge of Sawmill Road for the front yard. See id. The location of the proposed residence, as depicted on the Amended

3

Survey, does not encroach on these setbacks. Neighbors maintain that the underlying information about property boundaries is incorrect, therefore all measurements are based on a faulty premise. They do not challenge the accuracy of the measurements themselves.

16. Neighbors have submitted two additional surveys, one prepared in 2003 by surveyor Jon Endres and one prepared in 2007 by surveyor David E. Spurr. The surveys depict alternative locations for the Sawmill Road right-of-way, and Neighbors suggest that they also shed light on certain property boundaries. See Neighbors' Opposition to Motion for Summary Judgment (Neighbors' Opposition), Exhibits 6, 7, filed May 13, 2020. Neighbors have also submitted an affidavit from Mr. Spurr. See Affidavit of David E. Spurr. Applicants dispute the accuracy, legal impact, and general relevance of these materials for purposes of this zoning appeal.

## Discussion

Both parties in this case have filed motions for summary judgment. Applicants seek judgment in their favor on each of Neighbors' 13 questions, while Neighbors ask the Court to deny Applicants' permit or, in the alternative, remand to the DRB for further proceedings. Before addressing the motions, we note that Neighbors' opposition to the Project is intertwined with a property dispute involving the precise location of the Town's right-of-way along Sawmill Road, which runs between the easterly boundary of Neighbors' land and the westerly boundary of Applicants' land. Neighbors also dispute the location of Applicants' westerly boundary, arguing that Applicants do not own the land between the centerline of Sawmill Road and the eastern edge of the Town's right-of-way.

The Environmental Division is a Court of limited appellate jurisdiction. We can only review those issues the municipal panel below had the authority to address when considering the original application. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. May 24, 2012) (Durkin, J.) (citation omitted). The scope of our review is further limited by the Questions presented in Appellants' Statement of Questions. See V.R.E.C.P. 5(f); In re Garen, 174 Vt. 151, 156 (2002) (citation omitted). The Court has the power, and the duty, to raise its lack of subject matter jurisdiction sua sponte, regardless of how the issue comes to the Court's attention. See V.R.C.P. 12(h)(3); In re G.R. Enters., Inc., No. 27-2-08 Vtec, slip op. at 2 (Vt. Envtl. Ct. May 12, 2008). At multiple status conferences we have informed the parties that this Court

lacks jurisdiction to adjudicate private property rights, and that the Civil Division of the Vermont Superior Court has jurisdiction over their property disputes. See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41, 192 Vt. 474 ("[T]he Environmental Division does not have jurisdiction to determine private property rights."); Nordlund v. Van Nostrand, 2011 VT 79, ¶ 13, 190 Vt. 188 (confirming that this Court can evaluate a right-of-way's compliance with municipal regulations, but not its scope); Blanche S. Marsh Inter Vivos Tr. v. McGillvray, 2013 VT 6, ¶¶ 19-22, 193 Vt. 320.

On July 27, 2020, Neighbors informed the Court that they had filed suit against Applicants for declaratory judgment as to the location of certain property boundary lines and the Sawmill Road right-of-way. That case is ongoing at the Civil Division, Bennington Unit. See Cottrell v. Missbrenner, No. 127-7-20 Bncv. As this zoning appeal moves forward, we are mindful of our jurisdictional limitations and we remind the parties that this decision has no bearing on the private property rights at issue in the Civil Division. We address the pending motions to the extent that our jurisdiction allows, based on Neighbors' Statement of Questions; Applicants' proposal; and the applicable provisions of the Town of Pownal Zoning Bylaws (Bylaws).

I.     <u>Neighbors' Motion for Summary Judgment or Remand</u>

Neighbors' motion asks the Court to deny Applicants' proposal or, in the alternative, remand to the DRB for further proceedings. Consistent with their general position in this appeal, Neighbors assert that Applicants failed to provide accurate survey information to the DRB and this Court concerning the Property and the surrounding area, specifically the locations of the Property's westerly boundary line and the Sawmill Road right-of-way. Neighbors appear to argue that the Project cannot be reviewed for compliance with setbacks or other Bylaw requirements until the inaccuracies are corrected. As such, they contend that the Court should deny the Project or remand to allow the DRB to conduct another review with more accurate information.

Though Applicants have not responded, a party's "failure to respond does not require an automatic summary judgment; rather, two requirements must be met. First, the supporting materials must be both formally and substantively sufficient to show the absence of a fact question, and second, summary judgment must be appropriate in the sense that the moving party is entitled to judgment as a matter of law." Miller v. Merchants Bank, 138 Vt. 235, 238

(1980); see also V.R.C.P. 56(e)(3). Neighbors' motion is essentially a reframing of certain arguments made in opposition to Applicants' motion for summary judgment. This Court can consider materials in the record other than those cited in the statement of facts to supplement our understanding of the case. V.R.C.P. 56(c)(3); see Stone v. Town of Irasburg, 2014 VT 43, ¶ 56, 196 Vt. 356.

*a. Whether Applicants' proposal should be denied*

Neighbors' request to deny the Project is based on the alleged inaccuracy of property lines on Applicants' surveys and therefore implicates property rights issues beyond our jurisdiction. In municipal zoning appeals, "this Court has repeatedly stated that an applicant has the initial burden to produce some evidence of title or an interest in the property to be developed." In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan 2, 2008) (Durkin, J.) (citations omitted). At that point, "there is a delicate balance between the evaluation of th[e] initial threshold burden and the Court's jurisdictional limitations." Id. at 4. The burden an applicant must meet is "relatively low," and "[o]nce some evidence has been put forth on an applicant's interests and right to develop the property, 'further claims to title, or claims attacking the same must go to the appropriate [unit of the Civil Division].'" Id. at 4–5 (quoting In re Monty, Docket Nos. 7-1-04 Vtec and 47-3-04 Vtec, slip op. at 6-7 (Vt. Envtl. Ct. Jan. 24, 2006) (Durkin, J.)). Thus, our consideration of Neighbors' argument is limited to the question whether Applicants have met their threshold burden to produce "some evidence of title or an interest in the property to be developed."[2] See In re Leiter, No. 85-4-07 Vtec at 4 (Jan 2, 2008).

---

[2] We note that applicants in zoning cases also bear the burden of demonstrating compliance with the applicable municipal bylaws. The burden of demonstrating compliance can be intertwined with the burden to show ownership or the right to develop, because certain bylaw requirements implicate property interests. For example, a problem might arise if the bylaws require an applicant to secure easements for utilities and sewer lines, and the applicant fails to provide evidence of those easements. See In re Monty, Nos. 7-1-04 Vtec and 47-3-04 Vtec at 6-7 (Jan. 24, 2006) ("[Applicant] does not appear to offer any specific evidence to support his apparent assertion that he has the right to lay the proposed utilities . . . .").

In that situation, as with other questions involving property, the municipal panel below and Environmental Division on appeal must determine only whether the applicant has satisfied the requisite burden; neither has jurisdiction to determine the scope or the actual existence of the claimed property interests. See id.; see also Appeal of Bowman, Docket No. 70-5-90 Vtec, slip op. at 10 (Vt. Envtl. Ct., June 21, 2005) (Wright, J.) ("Although the Environmental Court does have jurisdiction to determine whether a permit applicant has met all the requirements of the zoning ordinance, including whether the permit applicants have met their burden of proof that they have

Applicants have provided four pieces of evidence to support their ownership of and right to develop the Property. The first is a deed from Grantor Clyde E. Lanfair, dated October 18th, 2001, conveying a parcel in Pownal, Vermont to Applicants. The parcel is described as:

> Bounded on the north and east by lands . . . of Robert A. Church and Betty A. Church, and lands . . . of Niles, on the south by lands . . . of Legge, Davis, and Cross, and on the west be [sic] said lands of Davis and lands of Cross, and by Sawmill Road, so-called. Meaning and intended to convey all of Grantor's real estate on the easterly side of Sawmill Road in the Town of Pownal, Vermont.

Applicants' Motion, Exhibit B. The second piece of evidence is the 2019 Survey for the proposed subdivision, prepared in 2019 by licensed land surveyor John S. Wright and submitted to the DRB as part of the application. See Applicants' Motion, Exhibit D. The 2019 Survey states that it was prepared with reference to several deeds, including Applicants' deed, and other records. See id. The 2019 Survey depicts the westerly boundary of Applicants' land as running along the center line of the traveled way of Sawmill Road.[3] See id.

The third piece of evidence is an amended version of the 2019 Survey (Amended Survey) which, according to Mr. Wright, reflects new information about the location of the Town's right-of-way for Sawmill Road. See Applicant's Reply, Exhibits H, J. While both parties agree that newly discovered Town records from 1892 clarify the right-of-way location, and that the depiction in the original 2019 Survey was incorrect, Neighbors dispute the updated right-of-way location shown on the Amended Survey. Regardless of the right-of-way dispute, the Amended Survey does not appear to show a change to the boundaries of Applicants' parcel. As relevant here, both the 2019 Survey and Amended Survey depict Applicants' westerly boundary as the center line of

---

access to their property over an easement of a certain minimum width, it does not have jurisdiction to determine the underlying property rights of the affected parties.").

Here, Neighbors do not assert that Applicants' proposal fails to demonstrate compliance with the bylaws on its face, but rather that setbacks and other requirements cannot be measured because Applicants' surveys inaccurately describe certain property lines. As we cannot opine on the underlying property dispute, denial of the Project on those grounds is inappropriate. Given the position taken by Neighbors across various filings, we interpret Neighbors' motion as one raising a question that we *are* able to answer: whether Applicants have met their burden to show some evidence of title or the requisite interest in the subject property.

[3] We refer to the traveled way, meaning the actual roadway, to distinguish between the roadway itself and the right-of-way. See Town of S. Hero v. Wood, 2006 VT 28, ¶ 17, 179 Vt. 417, 425 (2006) (distinguishing between the "traveled way" of a road and the associated right-of-way). Applicant's 2019 Survey appears to show that the center line of the traveled way and the right of way are the same, however the distinction becomes important as we continue discussing Applicants' evidence.

the traveled way of Sawmill Road. See Applicants' Motion, Exhibit D; Applicants' Reply, Exhibit H. In other words, the boundary as depicted appears to be tied to the location of the traveled way, not the right-of-way. The fourth piece of evidence concerning Applicants' ownership of the Property is an affidavit from Mr. Wright incorporating the 2019 Survey and the Amended Survey. See Applicants' Reply, Exhibit J.

Based on the evidence outlined above, we conclude that Applicants have met the threshold burden to show their interest in the property to be developed. The 2019 Survey and Amended Survey appear internally consistent, apart from the small change to the location of the Sawmill Road right-of-way. Applicants' westerly boundary appears to be the same on both surveys because the boundary is depicted as the center line of the traveled way of Sawmill Road. Though Neighbors have presented alternative surveys showing slightly different locations for the westerly boundary line and the right-of-way, we have no authority to engage in boundary determinations. See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41, 192 Vt. 474. We cannot deny a proposal on grounds that exceed our jurisdiction. Furthermore, Neighbors do not allege, nor do they provide any evidence to suggest that correcting the alleged inaccuracies would impact the Project's compliance with the bylaws.[4] For these reasons, we conclude that Neighbors have not shown that the Project should be denied as a matter of law. See V.R.C.P. 56(a). We now turn to Neighbors' argument for remand.

*b. Whether Applicants' proposal should be remanded to the DRB*

Neighbors' motion suggests that remand is warranted because it is undisputed that the 2019 Survey presented to the DRB incorrectly depicted the location of the Sawmill Road right-of-way. We assume that Neighbors are raising the principle that this Court "may only review applications that have been subjected to a full review by the appropriate tribunal below." In re 34 Fitzsimonds Rd 3-Lot Subdivision, No. 68-6-18 Vtec, slip op. at 7–8 (Vt. Super. Ct. Envtl. Div. Apr. 25, 2019) (Durkin, J.) (citation omitted). In practice, this principle means that "any

---

[4] As we have said, Neighbors' contend that Applicants have not provided the information "necessary to accurately set forth the boundary lines and setbacks required by the Pownal Zoning Bylaws." Neighbors' Motion at 4. Yet even if we were to adopt Neighbors' assessment of the property boundaries, their motion provides no basis for a conclusion that the Project fails to comply with the Bylaws' requirements.

8

application that is substantially or materially changed from the application presented below cannot proceed before this Court." See id. (quotation omitted); see also In re Sisters & Bros. Inv. Grp., LLP, 2009 VT 58, ¶ 21, 186 Vt. 103 (2009) ("While truly substantial changes to the form or type of an application do require remand, . . . revisions to a site plan that do not materially change the pending application or the type of permit requested are lawful and do not necessarily require a remand.").

Neighbors do not offer any reason why new information about the location of the Sawmill Road right-of-way represents a substantial or material change to the application such that remand is required. They do not cite any bylaw requirements related to the location of the Sawmill Road right-of-way, nor do they point to any impacts of the new information on the scope, form, or type of the application before us. See In re Sisters & Bros., 2009 VT 58, ¶ 21. Without more, we can only conclude that Neighbors have not shown that they are entitled to judgment as a matter of law. See V.R.C.P. 56(a). For the reasons outlined above, Neighbors motion for summary judgment or remand is **DENIED**.

II.      Applicants' Motion for Summary Judgment

Applicants move for summary judgment on each of the 13 questions in Neighbors' Statement of Questions. Our discussion therefore addresses the entirety of Neighbors' Statement of Questions, grouping certain questions together where appropriate.

*a. Questions 1, 2, 3, 7, and 9*

Applicants contend that they are entitled to summary judgment on Questions 1–3, 7, and 9 because the questions fall outside the Court's subject matter jurisdiction. Accordingly, we review this portion of Applicants' motion as a V.R.C.P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. In reviewing such a motion, we accept all uncontroverted factual allegations as true and construe them in the light most favorable to the nonmoving party. See Rheaume v. Pallito, 2011 VT 72, ¶ 2, 190 Vt. 245.

Applicants maintain that Questions 1–3, 7 and 9 require adjudication of private property rights issues and thus we lack jurisdiction to answer them.[5] We agree. In the case of Questions 1 and 2, Neighbors ask the Court to determine whether Applicants' 2019 Survey accurately depicts the location and boundary lines of the property at issue, and whether the survey erroneously includes land not owned by Applicants. See Statement of Questions. We have no authority to make such determinations. See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41, 192 Vt. 474. In the case of Question 3, Neighbors ask whether the issuance of a permit based on Applicants' 2019 Survey would result in an unlawful taking of Neighbors' land. We have no authority to determine the boundaries of Neighbors' land or apply the law of takings in this zoning appeal. See id.; In re Torres, 154 Vt. 233, 235–36 (1990) ("The reach of the superior court in zoning appeals is as broad as the powers of a zoning board of adjustment or a planning commission, but it is not broader.").

Questions 7 and 9 suffer the same jurisdictional problems as Questions 1 and 2, in that they ask the Court to ascertain "the proposed lot's true boundary lines." See Statement of Questions. Furthermore, we note that Question 7 and 9 appear to request a determination based on a hypothetical change to Applicants' proposal. See id. (asking whether Applicants' proposal will meet certain requirements "if the flawed survey . . . is corrected."). Any review of hypothetical, future versions of Applicants' proposal would be an impermissible advisory opinion.

---

[5] The Questions are as follows:
1. Does the survey plat prepared by John Wright, P.E. prepared for and submitted with the subdivision permit application of Ms. Missbrenner and Ms. Legge (hereinafter the Applicants) accurately describe the location of the lot being created by subdivision, including all boundary lines?
2. Does the survey plat prepared by John Wright, P.E., described in Paragraph 1, erroneously depict a portion of Appellants' surveyed land as being part of and within the boundaries of Applicants' land?
3. Does the granting of a permit to the Applicants based on the flawed survey, described in Paragraph 1, constitute an unlawful taking of Appellants' land?
7. Will the Applicants' proposed lot meet the minimum 2-acre lot size requirement established by the Town of Pownal Zoning Bylaws if the flawed survey, described in Paragraph 1, is corrected to reflect the proposed lot's true boundary lines?
9. Will the Applicants' proposed proposed [sic] residence meet the setback requirements established by the Town of Pownal Zoning Bylaws if the flawed survey, described in Paragraph 1, is corrected to reflect the proposed lot's true boundary lines?

See Statement of Questions.

See In re Bennington Sch., Inc., 2004 VT 6, ¶¶ 18–19, 176 Vt. 584, 845 A.2d 332 (mem.) (refusing to render an opinion as to whether a hypothetical student housing proposal, which had not actually been presented to the zoning board, would require conditional use approval).

Neighbors do not offer a direct counterargument regarding the jurisdictional issues above. Most of their argument is squarely aimed at the underlying property disputes concerning the Sawmill Road right-of-way and Applicants' westerly boundary line, which we cannot resolve in this proceeding.

Neighbors do raise one issue which we have authority to address and clarify. Neighbors argue that Applicants' cannot meet their threshold burden to show some evidence of ownership or "legal interest in the property between the centerline of Saw Mill Road and the easterly boundary of the Town's Saw Mill Road right-of-way." Neighbors' Opposition at 8; see also In re Leiter Subdivision Permit, No. 85-4-07 Vtec, slip op. at 4 (Vt. Envtl. Ct. Jan 2, 2008) (Durkin, J.) (citations omitted). We have already determined, in the context of Neighbors' motion for summary judgment, that Applicants have satisfied that burden. Neighbors' argument to the contrary appears to rest on a misunderstanding of our jurisdictional limitations. Neighbors point to the 2019 Survey and argue that it cannot show ownership of the disputed area because it is based on faulty assumptions about the deed and the Sawmill Road right-of-way. See Neighbors' Opposition at 9. This is precisely what we cannot decide. Applicants have presented two surveys which depict consistent boundaries for the parcel they wish to subdivide. Those surveys incorporate references to Applicants' deed, and the deed is also in the record before us. Mr. Wright, who prepared the surveys, has provided an affidavit discussing the surveys and his qualifications. This information is more than enough to satisfy Applicants' threshold burden. See In re Leiter, No. 85-4-07 Vtec at 5 (Jan. 2, 2008) (noting that the burden is "relatively low").

Neighbors also argue that we cannot take Applicants' evidence of ownership at face value because *de novo* review requires that we "determine the probative effect of the evidence as though no decision had been previously rendered." In re Milot, 151 Vt. 615, 617 (1989). While that standard is correct and applicable to this *de novo* appeal, it does not imbue this Court with subject matter jurisdiction where there is none. See, e.g., V.R.E.C.P. 5(g) ("In an appeal by trial *de novo*, all questions of law or fact *as to which review is available* shall be tried to the court.")

11

(emphasis added).  We will apply the *de novo* standard to each issue that is properly raised and within our jurisdiction, but we do not have license to reach conclusions of law or fact on matters of private property rights.  Applicants' have provided sufficient evidence to satisfy their threshold burden, and any "further claims to title, or claims attacking the same" must be resolved by the Civil Division. See In re Leiter, No. 85-4-07 Vtec at 5 (Jan. 2, 2008) (quotation omitted).

We have addressed Neighbors' argument to the extent we are able, and we must return to the issue at hand: whether Questions 1–3, 7, and 9 are within our jurisdiction.  Because we cannot adjudicate private property rights, and because these Questions ask us to do so, we conclude that the Court lacks subject matter jurisdiction to address them.  See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41; V.R.C.P. 12(b)(1); V.R.C.P. 12(h)(3).  Questions 1, 2, 3, 7, and 9 are therefore **DISMISSED**.

   b. *Questions 10, 11, 12, and 13*

Applicants' next argument is that Questions 10–13 challenge the Project's compliance with requirements that do not exist in the Bylaws.  In essence, Questions 10 and 11 ask whether the proposed wastewater system will "unduly limit" or "unduly impair" Neighbors' use and development of their property, while Questions 12 and 13 ask whether Applicants could "locate their proposed improvements. . . within their proposed lot" without unduly burdening or limiting the use and development of Neighbors' land.[6]  See Statement of Questions.  Applicants contend that there is "no legal basis" to review the Project under these standards, therefore we will review this part of Applicants' motion as a V.R.C.P. 12(b)(6) motion to dismiss for failure to state a claim.  See Applicants' Motion at 6; V.R.E.C.P. 5(f) (an appellant's Statement of Questions is

---

[6] Questions 10–13 are as follows:
   10. Will the proposed location of Applicants' proposed wastewater unduly limit or otherwise restrict Appellants use and development of Appellants' land?
   11. Will the proposed location of Applicants' proposed wastewater unduly impair Appellants ability to subdivide Appellants' land?
   12. Could Applicants locate their proposed improvements, including the proposed wastewater system, within their proposed lot without unduly limiting and/or burdening Appellants' use and development of Appellants' land?
   13. Could Applicants locate their proposed improvements, including the proposed wastewater system, within their proposed lot without unduly limiting and/or burdening Appellants' ability to further subdivide Appellants' land?
Statement of Questions.

"subject to a motion to dismiss or clarify some or all of the questions"). We will "consider whether it appears beyond doubt that there exist no facts or circumstances that would entitle [Neighbors] to relief." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1 (quotation omitted).

Neighbors assert that the Bylaws and the zoning review process serve "an important function in assuring that property owners['] property rights, including the right to develop their own properties, will not be unduly burdened by the development of abutting properties." See Neighbors' Opposition at 22. According to Neighbors, the State-mandated isolation zone for Applicants' proposed wastewater system extends onto Neighbors' property and this "overshadowing" limits Neighbors' ability to use or develop that property. Id. As this is an appeal from a municipal panel, this Court lacks jurisdiction to evaluate State wastewater requirements.[7] Nonetheless, for purposes of this summary judgment decision, the threshold issue is whether the applicable Bylaws provide for review of undue burdens or impairments to the use and development of Neighbors' property. See Statement of Questions; Colby, 2008 VT 20, ¶ 5.

Neighbors contend that the Project is subject to conditional use and subdivision review, and they cite several Bylaw provisions which purportedly protect the interests of neighboring property owners. Though Applicants argue that the Project is not subject to conditional use review, they provide little support for their position. It is undisputed that the Project is in the RR2 District. Bylaws Figure 7–1, the "Land Use Matrix," identifies which "land uses" are allowed as permitted, conditional, or accessory uses within the various zoning districts. See Bylaws Fig. 7–1. Subdivision is listed under the category of "Residential" land uses and is identified as a conditional use in the RR2 District. See id. (denoting conditional use with a "C" in the column "RR2"). Applicants suggest that a proper interpretation of Figure 7–1 would exclude their proposal from this apparent requirement, but we cannot reach that conclusion on summary

_____

[7] Our jurisdiction is limited to those issues the municipal panel below had the authority to address when considering the original application. See In re Torres, 154 Vt. 233, 235 (1990). Prior to July 1, 2007 municipalities retained authority to regulate on-site septic systems through municipal sewage ordinances under 24 V.S.A. ch. 102. After July 1, 2007, pursuant to 10 V.S.A. § 1976(b), municipal ordinances that regulated substantive aspects of potable water supplies and wastewater systems were superseded by the state statute and regulations concerning wastewater disposal systems, unless municipalities received special delegation from ANR. See In re Nancy Lewis Revocable Trust Variance, No. 110-6-08 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Apr. 29, 2011) (Wright, J.). The state regulations were intended "to establish a comprehensive review and permitting process for wastewater systems that would have state-wide uniformity." In re Bibby 5-Lot Final Plat Subdivision & Waiver Application, No. 189-11-10 Vtec, slip op. at 3 (Vt. Super. Ct. Mar. 02, 2012) (Durkin, J.); 10 V.S.A. § 1971.

judgment; Applicants' motion does not demonstrate why we should depart from the plain meaning.  See V.R.C.P. 56(a).  Thus, we will look to the Bylaws' subdivision and conditional use regulations to determine whether Questions 10–13 state cognizable claims.

When interpreting the Bylaws, we look to the plain language with the purpose of giving effect to legislative intent.  See In re Weeks, 167 Vt. 551, 554 (1998).  Words in the Bylaws should be interpreted in a manner that gives "effect to the whole and every part of the ordinance."  In re Trahan, 2008 VT 90, ¶ 20, 184 Vt. 262 (citing In re Stowe Club Highlands, 164 Vt. 272, 279 (1995)).  Where zoning regulations are ambiguous, we interpret them in favor of the landowner.  In re Weeks, 167 Vt. at 555 (citations omitted).  We may not, however, interpret an ordinance inconsistently with its enabling statute. Lemieux v. Tri-State Lotto Comm'n, 164 Vt. 110, 116–17 (1995).

i.    Whether the Conditional Use Standards Provide for Review of Questions 10–13

Beginning with conditional use, Neighbors' point to three provisions of the Bylaws. First is the general definition of conditional uses:

> Conditional uses are land uses which have potential for causing adverse impacts on other uses because of such factors as location, method of operation, scale or intensity of activity, or traffic generated. As a consequence, they require special review in which conditions may be imposed to insure [sic] compatibility, and a conditional use permit must be obtained before a conditional use is established (see Section 4.2.2). Conditional uses may also be denied if it is not possible to mitigate undue adverse impacts.

Bylaws § 3.8.2.  Second is the stated purpose of conditional use review, to "allow[] for review of certain land uses or types of development to ensure that they are appropriate where they are proposed, and compatible with adjacent uses."  Bylaws § 4.2.2.1.  Third is one of the conditional use criteria, stating that the DRB may deny a permit if "required findings adversely effect . . . [t]he character of the area affected."  Bylaws § 4.2.2.1(b).

Neighbors imply that the general definition and purpose provisions regarding conditional uses allow for review of specific impacts to individual property owners in the vicinity.  See Opposition at 21–22.  We do not agree.  Municipal bylaws often contain both purpose provisions and regulatory provisions. Purpose provisions are often non-enforceable, but they provide assistance when the interpretation of regulatory provisions comes into question.  See In re

14

Meaker, 156 Vt. 182,185 (1991); In re Musty Permit, No. 174-10-10 Vtec, slip op. at 3 (Vt. Super. Ct. Envtl. Div. Feb. 24, 2011) (Durkin, J.), *aff'd on other grounds*, 2012 VT 42. Purpose provisions can, however, include individual mandatory requirements that are enforceable. See In re Gerlach Parking Area Permit, No. 31-2-09 Vtec, slip op. at 8 (Vt. Envtl. Ct. Dec. 21. 2009) (Durkin, J.) (the requirement that a parking area "shall provide for pedestrian circulation" was an enforceable requirement despite its location within a purpose provision).

On a plain reading of the relevant language, neither the definition under § 3.8.2 nor the purpose statement under § 4.2.2.1 provide mandatory requirements. See Bylaws §§ 3.8.2 (directing the reader to the "special review" provisions under § 4.2.2), 4.2.2.1 (explaining the purpose of the review process). We also note that there is no express consideration of impacts to individual property owners. The language cited by Neighbors is far broader, providing background information and guidance for our analysis of whether the Project conforms to the regulatory provisions. To that end, the Town has chosen to enact conditional use criteria as authorized by the enabling legislation found at 24 V.S.A. § 4414(3), which states that the "general standards [adopted by the municipality] shall require that the proposed conditional use shall not result in an undue adverse effect" on five enumerated criteria. 24 V.S.A. §§ 4414(3)(A)(i)–(v). Bylaws § 4.2.2.1 states that the DRB "may deny a permit if required findings adversely effect" five criteria which correspond to those set forth in the statute. Compare Bylaws §§ 4.2.2.1(a)–(e), with 24 V.S.A. §§ 414(3)(A)(i)–(v). It is these criteria, not the general language cited by Neighbors, which regulate the permitting of conditional uses under the Bylaws.

As noted above, Neighbors do suggest that Questions 10–13 relate to conditional use criterion (b), which considers adverse effects on "[t]he character of the area affected." Bylaws § 4.2.2.1(b). In general, the "character of the area" standard evaluates aesthetics and other relevant characteristics of the area along with relevant zoning purposes and town policies, to determine whether a given proposal harmonizes with its surroundings and the municipality's goals for development. See generally Rublee 246 White Birch Lane CU, No. 140-11-15 Vtec, slip op. at 7–10 (Vt. Super. Ct. Envtl. Div. Aug. 23, 2016) (Walsh, J.) (discussing the standard in detail); Hettinger Conditional Use and Act 250 Approvals, No. 130-11-18 Vtec, slip op. at 10–12 (Vt. Super. Ct. Envtl. Div. Nov. 20, 2019) (Walsh, J.) (taking guidance from the "Quechee test" as used

15

in Act 250 proceedings). Neighbors have not shown, nor can we ascertain any place within that standard to consider specific impacts to Neighbors' "use and development" of their land or the "ability to subdivide" their property sometime in the future. See Statement of Questions.

The other conditional use criteria consider adverse effects on "a. The capacity of existing or planned community facilities; . . . c. Traffic on the roads and highways in the vicinity; d. Any other bylaw, ordinance, or regulation of the Town; [and] e. Utilization of renewable energy resources." Bylaws §§ 4.2.2.1(a), (c)–(e). We cannot identify, and Neighbors have not pointed to any relationship between these criteria and Neighbors' "use and development" of their land or the "ability to subdivide" their land. See Neighbors' Opposition at 21–23; Statement of Questions. For the reasons above, we conclude that the Bylaws' conditional use standards do not provide review for Neighbors' Questions 10–13.

ii.    Whether Questions 10–13 are Reviewable Under Subdivision Regulations

Neighbors argue that the Town's subdivision regulations provide for review of impacts to the use and development of, or ability to subdivide their property. They cite two purpose statements found under Bylaws § IX, titled "Subdivision of Land": (1) "To protect and provide for the health, safety, and general welfare of the Town of Pownal," and (2) "To guide future growth and orderly development of the Town." Bylaws § IX. These purpose provisions generally do not contain enforceable standards; instead, they provide guidance and context for the interpretation of regulatory provisions. See In re Meaker, 156 Vt. at 185; In re Musty, No. 174-10-10 Vtec at 3 (Feb. 24, 2011). While purpose provisions can include specific mandatory requirements, we cannot identify any mandatory language in these broad aspirational statements. Cf. In re Gerlach, No. 31-2-09 Vtec at 8 (Dec. 21. 2009). Furthermore, even if we assume that the Project could be evaluated for conformance with these provisions, we cannot see how the goals of protecting "health, safety, and general welfare" or "guid[ing] future growth and orderly development" contemplate reviewing a project based on its impacts to a specific neighbor's use and development of their land, or the ability to subdivide their land.

The Bylaws do contain specific regulatory provisions and criteria for subdivision approval. For minor subdivisions, a two-lot subdivision permit may be issued if the DRB considers the complete application and "is satisfied that both lots meet the minimum dimensional and setback

16

requirements of the district in which the lots are located." See Bylaws § 9.3.3.1. If preliminary plat approval is required, the applicant must meet eight different criteria. See Bylaws §§ 9.4.6(a)–(h). There are also twelve general criteria for "any subdivision" which consider (1) compatibility with the Town Plan, Bylaws and Ordinances, (2) preservation of natural features, (3) emergency access, (4) pedestrian circulation, (5) lot layout, (6) necessary easements, (7) an adequate and compliant water supply, (8) an adequate and compliant sewage disposal system, (9) construction and utility requirements, (10) proper stormwater management, (11) property markers, and (12) open space. See Bylaws § 9.7(1)–(12). We cannot identify, and Neighbors have not pointed to any relationship between the subdivision regulations and Neighbors' "use and development" of their land or the "ability to subdivide" their land. See Statement of Questions. For all these reasons, we conclude that the Bylaws' subdivision standards do not provide for review of Neighbors' Questions 10–13.

In sum, we agree with Applicants that the applicable Bylaws do not provide for review of Questions 10–13. We also note that Questions 12 and 13 ask the Court to speculate as to the impacts of different hypothetical versions of Applicants' proposal. See Statement of Questions (asking whether Applicants "could" locate their proposed improvements without limiting Neighbors' ability to use, develop, or subdivide their property). Any decision based on hypothetical and future versions of Applicants' proposal would be an impermissible advisory opinion. See In re Bennington Sch., Inc., 2004 VT 6, ¶¶ 18–19, 176 Vt. 584 (mem.). For the foregoing reasons, "it appears beyond doubt that there exist no facts or circumstances that would entitle [Neighbors] to relief." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1. Questions 10, 11, 12, and 13 are hereby **DISMISSED** for failure to state a claim. See V.R.C.P. 12(b)(6).

*c. Questions 4 and 5*

Applicants argue that Questions 4 and 5 also challenge the Project's compliance with requirements that do not exist in the Bylaws, therefore we will treat this part of Applicants' motion as a V.R.C.P. 12(b)(6) motion to dismiss for failure to state a claim. See V.R.E.C.P. 5(f). We will "consider whether it appears beyond doubt that there exist no facts or circumstances that would entitle [Neighbors] to relief." Colby, 2008 VT 20, ¶ 5. Question 4 asks: "Do the proposed well, wastewater system and structures Applicants' propose to construct within their

proposed lot meet the setback requirements established by the Town of Pownal Zoning Bylaws?" Statement of Questions. Question 5 asks: "Does the Applicants' wastewater system for the proposed lot actually meet the minimum setback requirements from a natural waterway or stream and from a public highway established by law and/or the applicable Zoning Bylaws?" Id.

Regarding Question 4, Applicants assert that the Bylaws' setback requirements are titled "Minimum Building Setbacks," therefore they do not apply to wastewater systems. See Bylaws Fig. 7–2. Regarding Question 5, Applicants argue that the wastewater system is not a "structure" therefore the 50-foot stream setback does not apply. See Bylaws Fig. 7–2 n. e ("No structure shall be built within 50 feet of a stream, water way or pond."). We note that the Bylaws provide building setback requirements in two categories: Figure 7–2 contains "Minimum Building Setbacks" for "Primary Structures and Uses," while Figure 7–3 contains "Minimum Accessory Building Setbacks." And, as Neighbors point out, there are setback requirements for other types of improvements. See, e.g., Bylaws §§ 3.12 (wind turbines), 5.1.2.2 (outdoor fireplaces), 5.1.4 (above-ground pools). The parties devote their arguments to issues of bylaw interpretation, discussing whether a wastewater system falls within the Bylaws' definition of "building" or "structure."

At this stage however, we cannot engage in bylaw interpretation. Applicants offer no information about their proposed wastewater system or drilled well, other than the proposed locations. We do not have the information necessary to determine whether there is a genuine dispute of material fact concerning these improvements, particularly when considering whether they fit within the definitions of "building" or "structure" under the Bylaws. See Bylaws Appx. 3.2, 3.19; see also V.R.C.P. 56(a). Applicants mention in passing that the wastewater system is "underground," but their statement of undisputed facts does not include this assertion and does not describe the system. See V.R.C.P. 56(c)(1). The parties discuss a State wastewater permit, but there is no permit in the record before us. For these reasons, we conclude that Applicants have not shown that they are entitled to judgment as a matter of law. See V.R.C.P. 56(a). Applicants' motion is **DENIED** as to Questions 4 and 5.

18

*d. Questions 6 and 8*

The final argument in Applicants' motion asserts that they are entitled to judgment on Question 6 and 8. Question 6 asks whether "Applicants' proposed lot meet[s] the minimum 2-acre lot size requirement established by the Town of Pownal Zoning Bylaws," and Question 8 asks whether "Applicants' proposed residence meet[s] the setback requirements established by the Town of Pownal Zoning Bylaws." Statement of Questions. Applicants contend that both Questions should be answered in the affirmative.

As relevant to Question 6, the Bylaws set a minimum lot size of 2 acres in the RR2 District. See Bylaws Fig. 7–2. It is undisputed that the Project is located within the RR2 District. Applicants contend that their proposed lot exceeds the 2-acre minimum lot size. See Applicants' Motion at 8; Applicants' Statement of Undisputed Facts ¶ 20–21, filed Mar. 26, 2020 (citing Exhibit D, the 2019 Survey). Applicants' 2019 Survey states that the lot to be created by subdivision will be 2.42± acres, of which .33± acres are within the Sawmill Road right-of-way. See Applicants' Motion, Exhibit D. Excluding the land within right-of-way yields a lot size of 2.09± acres. The Amended Survey, purportedly updated to reflect new information about the location of the right-of-way, states that the lot to be created by subdivision will be 2.42± acres, of which 0.27± acres are within the Sawmill Road right-of-way. See Applicants' Reply, Exhibit H. Excluding the land within the right-of-way yields a lot size of 2.15± acres. Thus, even if we could consider Neighbors' claim that Applicants' parcel does not extend into the right-of-way[8], both surveys show that the proposed lot is larger than the 2-acre minimum requirement. See Bylaws Fig. 7–2.

Neighbors do not offer an argument to the contrary. See Neighbors' Opposition at 23–25. Neighbors do, however, object to Applicants' reading of the 2019 Survey because "Applicants have not introduced an affidavit or sworn testimony of an expert to support the assertions. . . . Applicants are not surveyors and not qualified to interpret the information contained within a survey." Id. at 6 (responding to Applicants' Statement of Undisputed Facts). Applicants have submitted an affidavit from surveyor John S. Wright incorporating both surveys. See Applicants' Reply, Exhibit J. Mr. Wright has attested that he prepared the surveys in question. As to

---

[8] Though Neighbors do not raise that claim in their filings regarding Question 6, it is a consistent theme of their argument in general.

Neighbors' concern about interpretation of the surveys, the surveys speak for themselves as evidentiary material cited in support of Applicants' assertions. See V.R.C.P. (c)(1)(A). For these reasons, we do not agree with Neighbors' objection. Neighbors also maintain general concerns about the accuracy of boundary lines and the right-of-way as depicted on these surveys, and we reiterate that we cannot settle property disputes here. See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41, 192 Vt. 474.

Both the 2019 Survey and the Amended Survey clearly show that the new lot, as proposed, is larger than the 2-acre minimum required for the RR2 District. See Bylaws Fig. 7–2. Neighbors do not put forward an alternative reading of the surveys, nor do they challenge the measurements as depicted.[9] See Opposition at 3–6, 23–25; see generally Neighbors' Statement of Undisputed Facts, filed May 13, 2020. As such, and for purposes of this motion, we consider it undisputed that Applicants' proposed lot is larger than 2 acres. See V.R.C.P. 56(e)(2) (if a party fails to properly address another party's assertion of fact, the Court may "consider the fact undisputed."); In re All Metals Recycling Location Cert., No. 134-10-13 Vtec, slip op. at 19 (Vt. Super. Ct. Envtl. Div. Dec. 04, 2015) (Walsh, J.) (citing V.R.C.P. 56(e)(2)) (noting that the appellant "disputed" a fact "but provide[d] no citations to the record that show a genuine dispute") We therefore conclude that Applicants' proposed lot meets the Bylaws' minimum lot size requirement. See Bylaws Fig. 7–2.

As to Question 8, the Bylaws require a front yard setback of 25 feet from the "road edge" for primary structures and uses in the RR2 District. Bylaws Fig. 7–2. The Bylaws also require 30-foot side yard setbacks and a 40-foot rear yard setback, measured from the relevant property lines. Id. Applicants' proposed lot along Sawmill road includes a primary residence which must comply with these setbacks. Applicants argue that, as shown on their surveys, all setbacks are satisfied.

While both the 2019 Survey and the Amended Survey support Applicants' assertion, we refer to the Amended Survey because it is the most recent and because the setback

_____

[9] We recognize that there is a distinction at play in this case. In essence, Neighbors challenge the entire premise of Applicants' proposal and the accompanying surveys by arguing that Property's boundaries are not accurately represented. Because we cannot adjudicate that issue, our role is limited to assessing whether the Project *as proposed* complies with the Bylaws. Neighbors have not shown a genuine dispute as to whether the lot, as proposed, is larger than 2 acres.

measurements are clearly identified. See Applicants' Reply, Exhibit H. The Amended Survey depicts the proposed lot and "Proposed House," along with a dotted line labelled "building setback" running parallel to all boundary lines. See id. The Amended Survey also shows that the "building setback" line is set 40 feet from the rear yard property line, 30 feet from the side yard property lines, and 25 feet from the edge of Sawmill Road. See id. In other words, the survey depicts the required setback distances for the front, side, and rear yards. See Bylaws Fig. 7–2. The location of the proposed residence, as depicted on the Amended Survey, has ample clearance from the minimum setback distances on all sides. See Applicants' Reply, Exhibit H.

Neighbors consistently argue that Applicants' surveys are inaccurate as to boundary lines, therefore it is impossible to measure the setbacks. Once again, we note that this Court cannot consider private property rights; we can only determine whether the proposal before us complies with the applicable zoning regulations. See In re Woodstock Cmty. Tr. & Hous. Vt. PRD, 2012 VT 87, ¶¶ 40, 41, 192 Vt. 474 ("[T]he Environmental Division does not have jurisdiction to determine private property rights."); see also Nordlund v. Van Nostrand, 2011 VT 79, ¶ 13, 190 Vt. 188. Neighbors also object to Applicants' assertion that the proposed residence is set back more than 25 feet from the road edge, because "it is a statement unsupported by an affidavit or sworn testimony of an expert qualified to support the assertions." See Neighbors' Opposition at 6 (responding to Applicant's statement of undisputed facts); see also Applicant's Statement of Undisputed Facts ¶ 23.

Applicants submitted an affidavit from Mr. Wright incorporating both the 2019 Survey and Amended Surveys. The surveys speak for themselves as evidentiary material cited in support of Applicants' assertions. See V.R.C.P. (c)(1)(A). Neighbors do not suggest an alternative reading of either survey or challenge the surveys' admissibility. They do not cite to evidence showing that the proposed residence fails to comply with the setback requirements.[10] See Neighbors' Opposition at 3–6, 23–25; see generally Neighbors' Statement of Undisputed Facts. As such, and for purposes of this motion, we consider it undisputed that Applicants' proposed residence is: (1)

---

[10] Furthermore, we note that the front yard setback is measured from the "road edge," not the property line. See Bylaws Fig. 7–2. Neighbors' concern about boundary lines is focused on Applicants' westerly boundary, which corresponds with the front yard of the proposed residence. As the front yard setback is not measured from the property line, the disputed westerly boundary has no impact on the Project's compliance with the setback requirement.

more than 25 feet from the road edge; (2) more than 30 feet from the side yard property lines; and (3) more than 40 feet from the rear yard property line.  See V.R.C.P. 56(e)(2).  We therefore conclude that Applicants' proposed lot meets the Bylaws' minimum building setback requirements.  See Bylaws Fig. 7–2.

Because we conclude that the Project complies with the applicable minimum lot size requirements, and that the proposed residence complies with the applicable setback requirements, Applicants are entitled to judgment as a matter of law on Questions 6 and 8.  See V.R.C.P. 56(a).  Applicants' motion is **GRANTED** as to Questions 6 and 8, and we answer the Questions in the affirmative. See Statement of Questions.

## Conclusion

For the foregoing reasons, Neighbors' motion for summary judgment or remand is **DENIED**.  Applicants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.  Questions 1, 2, 3, 7, 9, 10, 11, 12, and 13 are **DISMISSED**.  Questions 6 and 8 are answered in the affirmative concluding that the Project complies with the applicable minimum lot size requirements, and that the proposed residence complies with the applicable setback requirements.  Questions 4 and 5 remain before the Court.

Electronically Signed:  1/5/2021 1:04 PM pursuant to V.R.E.F. 9(d).

Thomas G. Walsh, Judge
Superior Court, Environmental Division