Filed 02/24/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-03110

---

Louis Prue v. Tata's Natural Alchemy, LLC d/b/a Tata Harper Skincare

---

## DECISION ON MOTION TO DISMISS

Louis Prue was employed by Tata's Natural Alchemy, LLC d/b/a Tata Harper Skincare ("Tata's) for a period of time between 2012 and 2016. In 2024, he filed this action, asserting breach of contract and breach of the implied covenant of good faith and fair dealing based on a failure to provide stock options per his employment agreement. Tata's moves to dismiss the complaint as time-barred. The court grants the motion.

### The Complaint

According to Mr. Prue's Complaint, he and Tata's entered into a written employment agreement on or about August 10, 2012. The contract set forth the terms of Mr. Prue's employment and compensation as "Senior Operations Manager." The contract gave Mr. Prue the option to purchase member interests in Tata's, as set forth below:

> **Member Option Agreement Grant.** Employee, as Senior Operations Manager, shall be entitled to a [sic] receive a 'Cash Less' Option to Purchase Member Interests in the Company (the 'Option') subject to the vesting schedule below and terms and conditions and other provisions contained in a Option Agreement and subject to the Company Operating Agreement.
>
> (A) Option Exercise Price. The purchase price for all of the Option Interests shall be one hundred and twenty five thousand dollars ($125,000 USD) ("Aggregate Exercise Price") at a pre-money valuation of twelve million five hundred thousand ($12,500,000 USD) dollars.
>
> (B) Vesting. The Employee shall only retain ownership and the benefits of the Option after such Option has vested. The Option shall be subject to the following vesting schedule:
>
> (i) First quarter; (1/4) of the Option grant, with a purchase price of thirty one thousand, two hundred and fifty dollars ($31,250 USD), shall vest upon completion of twelve (12) months from the date of the first day of employment, unless Employee resigns or this Agreement is terminated by

the Company at any time prior to the completion of the twelve (12) months;

(ii) Second quarter; (2/4) of the Option grant, with a purchase price of thirty one thousand, two hundred and fifty dollars ($31,250 USD), shall vest upon completion of twenty four (24) months from date of the first day of employment, unless Employee resigns or this Agreement is terminated by the Company at any time prior to the completion of twenty four (24) months;

(iii) Third quarter; (3/4) of the Option grant, with a purchase price of thirty one thousand, two hundred and fifty dollars ($31,250 USD), shall vest upon completion of thirty six (36) months from the date of the first day of employment, unless Employee resigns or this Agreement is terminated by the Company at any time prior to the completion of the thirty six (36) months;

(iv) Last quarter; (4/4) of the Option grant, with a purchase price of thirty one thousand, two hundred and fifty dollars ($31,250 USD), shall vest upon completion of forty eight (48) months from the first day of employment, unless Employee resigns or this Agreement is terminated by the Company at any time prior to the completion of the forty eight (48) months[.]

Mr. Prue worked for Tata's from August 2012 through December 2016. He was never presented with an Option Agreement to sign nor was he provided with a copy of Tata's Operating Agreement. After his employment ended, Mr. Prue reached out to Tata's representatives to ask about "executing his stock options," but his inquiries went unanswered. In 2022, a foreign cosmetics company acquired Tata's. Mr. Prue was not notified and received no compensation as part of the acquisition. Mr. Prue asserts "upon information and belief" that some of Tata's employees and former employees were able to exercise their options and receive compensation for their stock options when Tata's was acquired even though some of them, like him, had not signed an Option Agreement. Following the acquisition, Mr. Prue contacted Tata's and its acquirer to exercise his options, but he was rebuffed.

Mr. Prue filed this action on August 12, 2024. He asserts causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Mr. Prue asserts that Tata's breached the employment contract by not permitting him to exercise his fully vested stock options. He asserts that Tata's breached the implied covenant by failing to provide him with an Option Agreement to review or execute, ignoring his inquiries regarding the exercise of his stock options, failing to notify him of the impending acquisition or allowing him to exercise his stock options, and notifying other similarly situated employees of the acquisition and allowing them to exercise their stock options.

<u>Analysis</u>

The parties' contract stated that it was governed by the laws of Delaware. Under Delaware law, " 'choice-of-law provisions in contracts do not apply to statutes of limitations, unless a provision expressly includes it. If no provision expressly includes it, then the law of the forum applies because the statute of limitations is a procedural matter.' " *B.E. Capital Mgmt. Fund, LP v. Fund.com Inc.*, 171 A.3d 140, 147 (Del. Ch. 2017) (quoting *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, No. N15C-02-059 EMD CCLD, 2015 WL 11120934, at *3 (Del. Super. Ct. Dec. 29, 2015) (footnote omitted)); *accord Hatcher v. Collecto, Inc.*, No. 1:19-cv-02079-SB, 2021 WL 765759, at *2 (D. Del. February 26, 2021).

The parties' contract did not expressly state that Delaware's statute of limitations would apply to claims to enforce the contract. As a result, Vermont's six-year statute of limitations applies to Mr. Prue's contract claims. *See* 12 V.S.A. § 511 (civil actions "shall be commenced within six years after cause of action accrues and not thereafter"). In Vermont, "[t]he statute of limitations begins to run when a party can sue on a cause of action." *Besaw v. Giroux*, 2018 VT 138, ¶ 19, 209 Vt. 388; *see also Blanche S. Marsh Inter Vivos Trust v. McGillvray*, 2013 VT 6, ¶ 15, 193 Vt. 320 (statute runs from time plaintiff can first sue on cause of action); *Furlon v. Haystack Ski Area, Inc.*, 136 Vt. 266, 270 (1978) (same).

Here, at the very latest, Mr. Prue's claim accrued when, soon after the termination of his employment, he inquired about the exercise of options and was met with silence. At that point, viewing the allegations (and the contract) in the light most favorable to Mr, Prue, his rights had vested; failure to honor those rights was clearly a breach of contract. He then waited nearly 8 years to file suit. The statute of limitations, however, had long since run.

Related considerations doom the claim for breach of the covenant of good faith and fair dealing. Under Delaware law, the implied covenant claim depends on the existence of a contract and " 'is used to infer contract terms to handle developments or contractual gaps that . . . neither party anticipated.' " *Wagner v. BRP Grp., Inc.*, 316 A.3d 826, 870 (Del. Ch. 2024) (quoting *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017)). "To prevail on an implied covenant claim, a plaintiff must prove 'a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.' " *Id*. (quoting Cantor Fitzgerald, L.P. v. Cantor, No. C.A. 16297–NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)). When Mr. Prue left his employment with Tata's, his contract ended; so too did any obligation of good faith and fair dealing. If there was a breach of that obligation, it can have occurred no later than the alleged breach of contract.

Mr. Prue argues nevertheless that the obligation of good faith and fair dealing somehow survived the termination of the parties' contractual relationship, such that it continued to exist nearly 6 years later when Tata's was sold. He cites neither Delaware nor Vermont law for this surprising and novel assertion; nor does he allude to any provision in the contract that would support such an assertion. While the court is mindful of the teachings of *Assoc. of Haystack Property Owners v. Sprague*, 145 Vt. 443, 447 (1985) ("courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme"), the theory asserted here exceeds the bounds suggested by that decision. Unless *Sprague* stands for the proposition that no claim, however farfetched, may be subject to a motion to dismiss—and the Court's affirmance of countless Rule 12(b)(6) dismissals in the 40 years since refutes that suggestion—its teachings cannot save Mr. Prue's good faith and fair dealing claim.

Order

The court grants the motion to dismiss the complaint. All claims are dismissed with prejudice.


Electronically signed pursuant to V.R.E.F. 9(d): 2/24/2025 11:39 AM

_____
Samuel Hoar, Jr.
Superior Court Judge